**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Adoption of A.C.B.,* Slip Opinion No. 2020-Ohio-629.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-629

IN RE ADOPTION OF A.C.B.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Adoption of A.C.B.,* Slip Opinion No. 2020-Ohio-629.]**

*Adoption—R.C. 3107.07(A)—Whether a noncustodial parent has provided the financial support necessary to preserve his or her right to withhold consent to the adoption of his or her child is measured by the terms of the judicial decree—Appellant-father failed without justifiable cause to comply with the child-support obligations of the judicial decree for the one-year period preceding the filing of appellee-stepfather's adoption petition—Court of appeals' judgment affirming probate court's judgment affirmed.*

(No. 2018-1300—Submitted May 7, 2019—Decided February 26, 2020.)

APPEAL from the Court of Appeals for Lucas County,

No. L-18-1043, 2018-Ohio-3081.

_____

DEWINE, J.

{¶ 1} A statute, R.C. 3107.07(A), provides that a parent's consent to the adoption of his child is not required when the parent has failed, without justifiable

cause, to provide for the maintenance and support of the child as required by law or judicial decree for a period of one year prior to the filing of the adoption petition. The question before us concerns the import of the phrase "as required by law or judicial decree." The appellant is a biological parent who had been ordered by a court to pay child support of $85 per week for a total of $4,420 a year. He did not comply with the court order; rather, the only payment he made in the year before the filing of the adoption petition was a single payment of $200. Both the probate court and the court of appeals found that this single payment—constituting less than 5 percent of his annual obligation—did not amount to the provision of support as required by law or judicial decree. We agree, and thus affirm the decision below.

### Adoption of A.C.B.

{¶ 2} This case involves the adoption of a child. For ease of reference, and in keeping with this court's practice of protecting the identity of juveniles, we will refer to the child by his initials, A.C.B.; we will refer to the party seeking to adopt the child as stepfather; and we will refer to A.C.B.'s birth parents as mother and father.

{¶ 3} A.C.B.'s parents dissolved their marriage in Indiana in 2013. The decree of dissolution, which incorporated a settlement agreement between the parents, awarded sole custody of A.C.B. to mother and ordered father to pay $85 per week in child support. Soon thereafter, father returned to Kosovo. After leaving the United States, he made only sporadic child-support payments, which diminished over time.

{¶ 4} Mother later moved to Ohio and married stepfather. In 2015, she asked father if he would consent to stepfather adopting A.C.B. Father refused. In 2017, stepfather petitioned the probate court to adopt A.C.B. He alleged that under R.C. 3107.07(A), father's consent was not required because father had, without justifiable cause, failed to provide maintenance and support as required by law or judicial decree for the year preceding the filing of the adoption petition.

2

{¶ 5} The probate court held a hearing on whether father's consent to the adoption was required. The parties stipulated that in the year preceding the adoption petition, father had made a single child-support payment of $200—a payment that was made two days before the filing of the petition. At the time of the hearing, father owed over $17,000 in child support. Father testified that his income had increased substantially since the child-support order had been entered, and that in the year prior to the filing of the adoption petition, he made close to $58,000. He admitted that he could "have afforded without any problem" to pay more in support than he did, but he chose not to make the payments. He told the court that he "may have been worried [about] where the money [from his child-support payments] was going." Father apologized and described his payment record as "inexcusable" for the year in question and said that he might have let his emotions get the better of him.

{¶ 6} The probate court found that during the year preceding stepfather's adoption petition, father had failed to provide for the maintenance and support of A.C.B. as required by the judicial decree and that his failure to do so was not justifiable. The Sixth District Court of Appeals affirmed the probate court's judgment. 2018-Ohio-3081, 106 N.E.3d 1277. We accepted father's discretionary appeal. 154 Ohio St.3d 1422, 2018-Ohio-4496, 111 N.E.3d 20. In his lone proposition of law, he asserts that under R.C. 3107.07(A), "provision of *any* maintenance and support during the statutory one-year period is sufficient to preserve a natural parent's right to object to the adoption of their child." (Emphasis added.)

**The plain language of R.C. 3107.07(A)**

{¶ 7} R.C. 3107.07(A) provides that a natural parent's consent to the adoption of a minor child is not required when the court

finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or *to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year* immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

(Emphasis added.) In construing the support clause of this provision, we have held that the party seeking to adopt the child must prove by clear and convincing evidence both (1) that the natural parent has failed to support the child for the requisite one-year period, and (2) that this failure was without justifiable cause. *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987), paragraph one of the syllabus, following *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140 (1986), paragraph one of the syllabus. Father does not challenge the probate court's finding that he lacked justifiable cause for failing to make the required payments. And he did not assign an error concerning justifiable cause below. 2018-Ohio-3081, 106 N.E.3d 1277, at ¶ 21, fn. 1. Thus, the only issue before us is whether his lone $200 payment over the relevant one-year period constitutes maintenance and support "as required by law or judicial decree."

{¶ 8} The starting point—and because the language is clear, the ending point—for our analysis is the text of the statute. The plain text of R.C. 3107.07(A) instructs a trial court to determine whether a natural parent provided maintenance and support "as required by law or judicial decree" for a period of at least one year immediately preceding the filing of the adoption petition. Here, the judicial decree sets forth precisely what father was required to pay: $85 per week, for a total of $4,420 over the course of a year. Father did not pay what the judicial decree required. He paid only $200 for the entire year before stepfather filed the adoption petition. Thus, under the plain language of the statute, father did not "provide for

4

the maintenance and support" of A.C.B. "as required by law or judicial decree" for the requisite one-year period.

{¶ 9} Despite the unambiguous terms of the statute, father asks us to hold that the payment of *any* support at all when a child-support order is in place constitutes the payment of support as required by law or judicial decree. Under this view (shared by the second dissent), a parent's consent is required unless there is a complete absence of support in the year prior to the filing of the adoption petition. Thus, a single $5 payment over the course of the year would suffice to protect the parent's right to consent. To reach this result, father looks to another portion of the statute—the clause that provides that a parent's consent is not required when the court finds that the parent, without justifiable cause, has failed to have more than de minimis contact with the child. R.C. 3107.07(A). He argues that because the legislature inserted a "more than de minimis" qualifier in the contact clause, and did not insert any qualifying language such as "de minimis, meager, or substantial" in the support clause, the legislature intended for any payment of support, no matter how meager, to suffice in preserving a parent's right to withhold consent to the adoption of a child.

{¶ 10} The problem with this argument is that it ignores the plain language of the statute. Father is correct that the legislature did not choose to qualify the amount of maintenance and support to be provided with any of his suggested terms, but the legislature did include qualifying language: "as required by law or judicial decree." R.C. 3107.07(A). Whether father has provided the necessary support under the statute is measured by the terms of the judicial decree.

{¶ 11} The first dissent presents a slightly different argument than father. Though purporting to apply the plain language of the statute, it would essentially read the phrase "as required by law or judicial decree" out of the statute. This dissent zeroes in on the phrase "for a period of at least one year immediately preceding * * * the filing of an adoption petition" and concludes that if there has

been one child-support payment made during the year, then parental consent is required. In other words, if someone is ordered to pay child support weekly, that person need only make 1 of the 52 required payments for the year. But, of course, that's not what the statute says. It says consent is not required if the parent has failed "to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition." R.C. 3107.07(A). Certainly, a parent who makes only one payment during the year—and thus is substantially in arrears on that year's child support—has failed to provide support as required by law or judicial decree for a period of at least one year preceding the filing of the adoption petition.

{¶ 12} To prop up its reading, the first dissent plucks a few phrases from prior opinions and asserts that we have already decided the issue in front of us; indeed, that stare decisis compels its preferred reading of the statute. Dissenting opinion of Kennedy, J., at ¶ 34. That's simply not true. In none of the cases cited, did we address the issue presented here. In *In re Adoption of M.B.* and *In re Adoption of Sunderhaus,* we referenced the one-year period as the applicable period for determining whether the father had failed to support the child. 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 23; 63 Ohio St.3d 127, 585 N.E.2d 418 (1992), paragraph two of the syllabus. But in neither case did we spell out what it meant to fail to provide support "as required by law or judicial decree." The other case cited by the first dissent actually undercuts its argument. In *In re Adoption of Bovett*, a father had failed to pay support for a one-year period, during three months of which he was unemployed. 33 Ohio St.3d at 103, 515 N.E.2d 919. The court of appeals had held that it was necessary to consider only the period of time in which the father was unemployed in making the justifiable-cause determination. *Id.* In the court of appeals' view, "[i]f, during *any part* of the year prior to the filing of the adoption petition, the nonsupporting parent had justifiable cause for not paying support, he is not barred from objecting to the adoption." (Emphasis added.) *In re*

6

*Adoption of Bovett*, 10th Dist. Franklin No. 86AP-429, 1986 WL 11771, \*3 (Oct. 14, 1986). We rejected this construction and held that the entire one-year period must be considered. *In re Adoption of Bovett* at paragraph three of the syllabus. In other words, it wasn't enough that the father had justifiable cause for failing to pay support during the period that he was unemployed. He also had to have justifiable cause for not paying during the rest of the year. Such a result would make no sense under the first dissent's reading of the statute. If a parent only needed to make a single payment during the year to preserve his right to object, then logically, a showing that there was justifiable cause for *any* missed payment during the year would have been sufficient for the *Bovett* parent to preserve his right to object. (It's also worth noting that a concurring justice in *Bovett* explicitly criticized the majority for failing to take advantage of the "opportunity" to provide guidance on the proposition asserted by the first dissent here—"whether the making of one payment of support during the year" would preserve the natural parent's right to consent.) *Id*. at 107 (Douglas, J., concurring).

{¶ 13} Father, like both dissents, seeks to justify his strained construction of the statutory language by resorting to policy arguments and through the invocation of the rights of natural parents. But of course, it is not only the interests of the biological parent that are at stake but also the interests of the child—interests that we have deemed "paramount." *See State ex rel. Booth v. Robinson*, 120 Ohio St. 91, 95, 165 N.E. 574 (1929). No question those charged with drafting of legislation of this sort must undertake a difficult balancing involving the rights of the child, the biological parents, and the potential adoptive parent. That policy judgment, though, is one entrusted to the legislature to make—and where, as here, its statutory command is clear, our role is to defer to the legislative judgment and apply the language of the statute.

{¶ 14} Our decision today that the plain language of the statute controls is consistent with this court's precedent applying R.C. 3107.07(A). In *In re Adoption*

*of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985), this court examined the contact component of an earlier version of R.C. 3107.07(A). The statute referred to parents who had "failed without justifiable cause to communicate with the minor." *Id*. at 366, quoting former R.C. 3107.07(A), Am.S.B. No. 205, Section 1, 138 Ohio Laws, Part I, 700. The court found that the "explicit language" of the statute controlled. *Id*. at paragraph two of the syllabus. Because the legislature had not qualified the term "communicate" with words like "*meaningfully*, *substantially*, *significantly*, or *regularly*," the court refused to add such terms to the statute. (Italics sic.) *Id*. at 366-367. Similarly, here, the explicit language controls—support is measured by what is required by law or judicial decree.

{¶ 15} Indeed, R.C. 3107.07(A)'s predecessor provided that parental consent was not required if a parent failed to "properly" support the child. *See* former R.C. 3107.06(B)(4), Am.S.B. No. 49, Section 1, 133 Ohio Laws, Part I, 72, 89. The legislature later removed the adjective "properly" and replaced it with the phrase "as required by law or judicial decree." *See* former R.C. 3107.07(A), Am.Sub.H.B. No. 156, Sections 1 and 2, 136 Ohio Laws, Part I, 1839, 1845, 1859. With this change, the legislature opted for an objective standard for determining what amount of maintenance and support was required—the amount set forth by law or judicial decree. *See* Charles R. Pinzone Jr., *Ohio's Exception to Consent in Adoption Proceedings: A Need for Legislative Action*, 36 Case W.Res.L.Rev. 348, 355 (1985).

**A two-step analysis**

{¶ 16} Of course, not every failure to provide maintenance and support as required by law or judicial decree will mean that a parent's consent to an adoption is not required. Assessing whether a parent has failed to provide support as required by law or judicial decree is just one step in the analysis. In this step, the statute instructs a probate court to review a biological parent's child-support payments for *a period of at least one year* preceding the filing of the adoption petition.

{¶ 17} The next step requires that the adoptive parent prove by clear and convincing evidence that the parent's failure to provide maintenance and support as required by law or judicial decree was without justifiable cause. R.C. 3107.07(A); *In re Adoption of Bovett*, 33 Ohio St.3d at 104, 515 N.E.2d 919. This ordinarily will not be an easy showing to make. The clear and convincing standard is the highest degree of proof available in civil cases. *Stark Cty. Milk Producers' Assn. v. Tabeling*, 129 Ohio St. 159, 171, 194 N.E. 16 (1934). It requires evidence that is sufficient to "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. If the adoptive parent cannot show by clear and convincing evidence that the biological parent's failure to provide support as required by law or judicial decree was without justifiable cause, the parent's consent to the adoption is still required.

{¶ 18} Not satisfied that the framework created by the legislature adequately protects the biological parent, the dissenting justices propose that we tweak the statutory language. They worry that in a hypothetical case, different from the one in front of us, application of the statute as written might work too harsh a result. Though they do not come right out and say so, the dissents seem to think that the statutory modifications they propose are preferable to allowing the probate court to make the justifiable-cause determination entrusted to it by the legislature. But that's a policy judgment—one that our Constitution leaves to the legislature to make, not the judiciary. For our part, we ought not to adopt a construction that "turn[s] the statute into a sham." *In re Adoption of Bovett* at 106.

**Father failed to provide support as required by the judicial decree**

{¶ 19} Here, application of the statute is straightforward. The Indiana court order required father to pay support of $85 per week, for a total of $4,420 over the course of a year. Father did not even come close to doing what was required by the judicial decree. He paid only $200 in the relevant one-year period (less than 5

percent of his annual obligation) and had an arrearage of over $17,000. Thus, he did not provide maintenance and support as required by law or judicial decree. Further, the probate court found that he lacked justifiable cause for not complying with the decree, and he did not challenge that finding below. Therefore, father's consent is not required for the adoption of A.C.B.

**Conclusion**

{¶ 20} In making a single $200 payment toward a $4,420 annual child-support obligation, father failed to provide maintenance and support as required by law or judicial decree. We affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and FRENCH, J., concur.

FISCHER, J., concurs in part and concurs in the judgment, with an opinion.

KENNEDY, J., dissents, with an opinion joined by DONNELLY, J.

STEWART, J., dissents, with an opinion.

_____

**FISCHER, J., concurring in part and concurring in judgment.**

{¶ 21} I join in the majority's decision to affirm the judgment of the Sixth District Court of Appeals and its holding that appellant, A.C.B.'s father, failed to provide maintenance and support as required by law or judicial decree. I respectfully disagree, however, with the portion of the majority opinion's analysis concluding that R.C. 3107.07(A) is unambiguous. I accordingly concur in the court's judgment and in its holding that "whether [a parent] has provided the necessary support under the statute is measured by the terms of the judicial decree." Majority opinion at ¶ 10.

{¶ 22} "A statute is ambiguous 'if a reasonable person can find different meanings in the [statute] and if good arguments can be made for either of two contrary positions.' " (Brackets sic and emphasis deleted.) *Turner v. Hooks*, 152 Ohio St.3d 559, 2018-Ohio-556, 99 N.E.3d 354, ¶ 12, quoting *4522 Kenny Rd.,*

*L.L.C. v. Columbus Bd. of Zoning Adjustment*, 152 Ohio App.3d 526, 2003-Ohio-1891, 789 N.E.2d 246, ¶ 13 (10th Dist.). In this case, the parties have presented different interpretations of R.C. 3107.07(A), and the viability of those interpretations is illustrated by the contrary positions taken in the majority and dissenting opinions. Notably, the justices of this court are not alone in their differing interpretations of R.C. 3107.07(A). Ohio's courts of appeals are similarly divided on what the statute means. *See, e.g.*, *In re R.M.*, 7th Dist. Mahoning No. 07 MA 232, 2009-Ohio-3252, ¶ 75-76 (noting that some appellate districts have determined that even a meager contribution to the child's support could satisfy the maintenance-and-support requirement of R.C. 3107.07(A), while other districts have found that more than a meager contribution is required). I would accordingly find R.C. 3107.07(A) ambiguous.

{¶ 23} "[W]here a statute is found to be subject to various interpretations, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at legislative intent." *Cline v. Ohio Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 96, 573 N.E.2d 77 (1991). "To discern legislative intent, we read words and phrases in context and construe them in accordance with rules of grammar and common usage." *Mahoning Edn. Assn. of Dev. Disabilities v. State Emp. Relations Bd.*, 137 Ohio St.3d 257, 2013-Ohio-4654, 998 N.E.2d 1124, ¶ 15. When interpreting a statute, " 'significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act.' " *Weaver v. Edwin Shaw Hosp.*, 104 Ohio St.3d 390, 2004-Ohio-6549, 819 N.E.2d 1079, ¶ 13, quoting *Wachendorf v. Shaver*, 149 Ohio St. 231, 78 N.E.2d 370 (1948), paragraph five of the syllabus. Furthermore, "we determine the intent of the legislature by considering the object sought to be attained." *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 554, 721 N.E.2d 1057 (2000).

{¶ 24} Pursuant to R.C. 3107.07(A), a parent's consent to adoption is not required if the parent fails "without justifiable cause * * * to provide for the

maintenance and support of the minor as required by * * * judicial decree for a period of at least one year" prior to the filing of the adoption petition. In order to give effect to the whole of R.C. 3107.07(A), we interpret the statute to provide that a parent must comply with the terms of the judicial decree for at least the entire year immediately preceding the filing of the adoption petition.

{¶ 25} Thus, the ambiguity inherent in the statute can be resolved by referring to the specific terms of the judicial decree involved in each case. Here, the judicial decree in this case required a payment of $85 per week, and therefore, A.C.B.'s father was required to pay that amount each week in order to "provide for the maintenance and support of the minor as required by * * * [the] judicial decree." Yet, on numerous occasions in the year prior to the filing of the adoption petition, he failed to pay the weekly $85 amount. Thus, the terms of the judicial decree were not met.

{¶ 26} This interpretation of R.C. 3107.07(A) is not unreasonable. I acknowledge that we must strictly construe exceptions to the requirement of parental consent to adoption in order to protect the rights of natural parents. *In re Adoption of P.L.H.*, 151 Ohio St.3d 554, 2017-Ohio-5824, 91 N.E.3d 698, ¶ 23. In doing so in this case, however, we should not countenance the clear failure to abide by the terms of the judicial decree as required by R.C. 3107.07(A). Because a single payment of child support over the course of the applicable one-year period does not constitute a full year's compliance with a judicial decree that requires the parent to make weekly payments, I agree with the conclusion reached in the majority opinion.

{¶ 27} This interpretation squares with the requirements of R.C. 3107.07(A) as a whole. The statue provides that parents who fail without justifiable cause to provide more than de minimis contact with a child for the year preceding the adoption petition will lose the right to withhold consent to the adoption of that child. It is more specific when addressing the provision of maintenance and

support. Instead of requiring the parent to have provided "more than de minimis" maintenance and support, R.C. 3107.07(A) requires the parent to have "provide[d] for the maintenance and support of the minor as required by law or judicial decree." These requirements are logical, as contact with a child is inherently difficult to measure objectively, while compliance with a judicial decree can easily be measured. Moreover, while one might argue that the provisions of R.C. 3107.07(A) are incongruous with criminal statutory provisions addressing the failure to provide child support, our task is to interpret the Revised Code, not to question the policy choices of the General Assembly. Finally, this interpretation of R.C. 3107.07(A) is not unconstitutionally vague, as R.C. 3107.07(A) puts parents on sufficient notice that if they fail without justifiable cause to comply with the terms of a judicial decree, they risk losing the right to withhold consent to an adoption.

{¶ 28} For these reasons, I respectfully concur in the court's judgment and in its holding that "whether [a parent] has provided the necessary support under the statute is measured by the terms of the judicial decree." Majority opinion at ¶ 10.

_____

**KENNEDY, J., dissenting.**

{¶ 29} The statutory trigger to strip parents of their right to withhold consent to their child's adoption is based on time, not the amount of support paid or unpaid. R.C. 3107.07(A) protects a parent's right to withhold consent to the adoption of his or her child unless the parent has failed without justifiable cause to provide the maintenance and support required by a child-support order *over a period of at least one year prior to the filing of an adoption petition*. Therefore, the statute contains an express duration requirement—a period of one year—that must be satisfied before the parent will be presumed to have abandoned his or her parental rights and responsibilities and before the probate court may find an absence of justifiable cause for the failure to provide support, thereby destroying the

parent's relationship with the child through adoption. Because the majority reads the duration condition out of the statute, I dissent.

{¶ 30} In this case, looking back for a period of a year from the filing of the adoption petition, A.C.B.'s father did not fail to make every child-support payment for one full year. Rather, in the year preceding the filing of the adoption petition, he paid some child support, a $200 payment shortly before the petition was filed, in accordance with the parents' Indiana decree of dissolution. Therefore, the court of appeals erred in holding that A.C.B.'s father's consent was not required before the adoption could proceed. Accordingly, I would reverse the judgment of the court of appeals.

{¶ 31} This case places us in familiar territory: statutory construction. Our duty in construing a statute is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted. *Griffith v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196, ¶ 18; *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 20. R.C. 1.42 guides our analysis, providing that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." Further, as we explained in *Symmes Twp. Bd. of Trustees v. Smyth*, "[w]hen the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). Rather, "[a]n unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.

{¶ 32} R.C. 3107.07(A) provides that a parent retains his or her right to withhold consent to the adoption of his or her minor child unless the court

    finds by clear and convincing evidence that the parent has failed
    without justifiable cause to provide more than de minimis contact

14

with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree *for a period of at least one year immediately preceding either the filing of the adoption petition* or the placement of the minor in the home of the petitioner.

(Emphasis added.)

{¶ 33} R.C. 3107.07(A) is unambiguous. Before a parent loses the right to withhold consent to the adoption of his or her child, he or she must (1) without justifiable cause (2) for a period of at least one year immediately preceding the filing of the adoption petition either (3) fail to provide more than de minimis contact with the child or (4) fail to provide for the maintenance and support of the child as required by law or judicial decree.

{¶ 34} We have previously held that a parent does not lose the right to withhold consent to an adoption unless he or she has "failed to support the child for a minimum of one year preceding the filing of the adoption petition," *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 23, and we have described R.C. 3107.07(A) as requiring a "one-year period of nonsupport," *In re Adoption of Sunderhaus*, 63 Ohio St.3d 127, 585 N.E.2d 418 (1992), paragraph two of the syllabus. That is, "[t]he statute and the cases make clear that a failure either to communicate with the child or to provide for the maintenance and support of the child *must be shown to have continued for an entire year* before the issue of justifiable cause is reached." (Emphasis added.) *In re Adoption of Bovett*, 33 Ohio St.3d 102, 105, 515 N.E.2d 919 (1987). The statute, we have stated, requires a "*complete failure* to make any child support payments" during the one-year period. (Emphasis added.) *In re Adoption of Masa*, 23 Ohio St.3d 163, 166, 492 N.E.2d 140 (1986). Stare decisis is most compelling when precedent involves statutory construction, *Rocky River v. State Emp. Relations Bd.*, 43 Ohio St.3d 1, 6, 539

N.E.2d 103 (1989), and the majority fails to justify departing from stare decisis today.

{¶ 35} In *In re Adoption of Bovett,* we rejected the invitation to overrule our prior holding in *In re Adoption of Masa* that the petitioner for adoption had the burden to prove, by clear and convincing evidence, that the natural parent of the child had lost the right to withhold consent to the adoption. Rather, we held that "[p]ursuant to R.C. 3107.07(A), the petitioner for adoption has the burden of proving, by clear and convincing evidence, *both* (1) that the natural parent *has failed to support the child for the requisite one-year period*, and (2) that this failure was without justifiable cause." (Emphasis added.) *In re Adoption of Bovett* at paragraph one of the syllabus. The court recognized that only after the natural parent has failed to provide any support for the child for the whole one-year period does the probate court address the second step of the analysis regarding whether that failure to provide support was justified. *Id.* at 105 ("The statute and the cases make clear that a failure * * * to provide for the maintenance and support of the child must be shown to have *continued for an entire year* before the issue of justifiable cause is reached. Once such a failure has been proven, the probate court must then decide whether that failure was without justifiable cause" [emphasis added and citations omitted]). Put another way, the parent's right to withhold consent is in jeopardy only when the failure to provide support has *continued* for the entire one-year period.

{¶ 36} At that point, the separate justifiable-cause analysis is triggered, which, according to *Bovett*, permits the right to withhold consent to be terminated if the petitioner proves that "the parent's failure to support the child *for that period as a whole* (and not just a portion thereof) was without justifiable cause." (Emphasis sic.) *Id*. at paragraph three of the syllabus. Because the focus is on the one-year period as a whole, i.e., the entire duration—just as it is with the payment of support—the existence of justifiable cause for a single missed payment during the

year is not by itself sufficient to preserve the right to withhold consent. *Bovett* instructs the probate court to look at *the year as a whole* and decide whether the petitioner proved that the complete failure to provide support was unjustified. In *Bovett*, the father had failed to pay child support for one year, triggering the justifiable-cause analysis. And looking at the whole year (not just a portion of it), his unemployment for three months did not, standing alone, justify the failure to provide any support for the entire year when he was gainfully employed for the other nine months. As with the failure to provide support, the justifiable-cause analysis looks at *the totality* of the one-year period, not the number of missed payments, to decide whether the complete lack of support was without justifiable cause. That focus is the same whether there appears to be justification for only 1 missed weekly payment or for 51 missed payments.

{¶ 37} But in any case, we have no occasion to consider the application of a justifiable-cause analysis in this case. According to our precedent in *Bovett*, the probate court never reaches the justifiable-cause analysis because the one-year period of non-support did not occur. Because A.C.B.'s father did not completely fail to provide child support for the full year preceding the adoption petition, *Bovett* is distinguishable on that ground and the justifiable-cause analysis is not at issue.

{¶ 38} The General Assembly established this duration requirement for a reason: the failure to contact or support the child for a period of one year raises a presumption that the parent has abandoned his or her parental rights and responsibilities. It has long been recognized that although parents have a paramount right to the care and custody of their children, that right can be voluntarily relinquished, or it can be lost by abandonment of the child or by becoming totally unable to provide for the child's support or care. *See Reynolds v. Goll*, 75 Ohio St.3d 121, 123-124, 661 N.E.2d 1008 (1996); *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977); *Clark v. Bayer*, 32 Ohio St. 299, 310 (1877). In codifying these bases for the loss of parental rights, the statute made them more

objective. Before the presumption arises, there must be a lack of contact or support for the full one-year period. *See In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, at ¶ 23; *In re Adoption of Sunderhaus*, 63 Ohio St.3d 127, 585 N.E.2d 418, at paragraph two of the syllabus; *In re Adoption of Bovett*, 33 Ohio St.3d at 105, 515 N.E.2d 919. If so, that presumption may be rebutted by a showing of justifiable cause. R.C. 3107.07(A).

{¶ 39} The General Assembly, as the sole arbiter of public policy, did not use a payment threshold as the trigger to remove the right to withhold consent; it used a temporal threshold: one year. The majority, however, reads that one-year duration requirement out of the statute when it holds that a parent does not preserve the right to withhold consent to an adoption unless he or she strictly complies with the child-support obligation and makes each and every child-support payment throughout the year. As Justice Stewart's dissenting opinion points out, the majority's reasoning permits the filing of an adoption petition seeking to terminate a noncustodial parent's parental rights immediately upon a missed or partial child-support payment. Dissenting opinion of Stewart, J., at ¶ 54. It is therefore unnecessary under the majority's interpretation of the statute for a probate court to review the full one-year period, because it does not need to look any further back than the last missed payment—and tellingly, the majority here looks no farther back than two weeks.

{¶ 40} But if the General Assembly had intended to deprive a parent of his or her right to withhold consent to an adoption when there was *any* failure to provide maintenance and support *within the preceding year*, it could have easily done so using that language. But it did not and instead required a failure to provide maintenance and support *for a period of at least one year*. By separating the duration requirement out from the rest of the statute, the majority takes a provision protecting the right to withhold consent unless there is an ongoing, continuous failure to provide support for a period of at least a year and replaces it with one that

makes any failure to comply with the child-support order within the year preceding the petition a basis for eliminating the right to withhold consent. "[A] court may not rewrite the plain and unambiguous language of a statute under the guise of statutory interpretation," *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 20, and we should not do so today.

{¶ 41} Moreover, when considered with other provisions in Ohio's statutory scheme, the majority's analysis, taken to its logical conclusion, would suggest that the General Assembly has provided more protections to a putative father than to an established parent subject to a child-support order. Among other grounds, a putative father's consent is not required for adoption if he "has willfully abandoned or failed to care for and support the minor." R.C. 3107.07(B)(2)(b). But under the majority's holding today, a natural parent's consent is not necessary when he or she, without justifiable cause, has failed to make one child-support payment. However, we have held that a putative father's interest in a potential relationship with a child is afforded "far less constitutional protection" than that given to an established parent-child relationship. *In re Adoption of H.N.R.*, 145 Ohio St.3d 144, 2015-Ohio-5476, 47 N.E.3d 803, ¶ 26. Nothing in the plain language of R.C. 3107.07 indicates that the General Assembly intended to upend that order.

{¶ 42} The majority also appears blind to the practical realities of domestic-relations law. Although many people use a stepparent adoption to bring a blended family together, it may also be misused as a tool for removing a natural parent from a remarried parent's life. "When families break apart, it is not uncommon for parents to harbor feelings of pain, bitterness, and anger toward their former partners. * * * For some parents, the opportunity to terminate the parental rights of their ex-spouse provides the ultimate weapon in the arsenal of matrimonial warfare." Blair, *Parent-Initiated Termination of Parental Rights: The Ultimate Weapon in Matrimonial Warfare*, 24 Tulsa L.J. 299, 300-301 (1989). Adoption not

only eliminates the noncustodial parent's parental rights and responsibilities—including the right to visitation and to have a say in the child's education and religious affiliation—but also severs the child's legal relationships with the parent, grandparents, and other blood relatives. *See generally* R.C. 3107.15; *State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Court of Common Pleas*, *Probate Div.*, 150 Ohio St.3d 230, 2016-Ohio-7382, 81 N.E.3d 380, ¶ 31. Stepparent adoption destroys those family ties by creating new ones. And because withholding consent may be a noncustodial parent's only defense in a stepparent-adoption proceeding, loss of that right should not be premised on something so relatively minor as a missed or untimely child-support payment. *See* 2 Haralambie, *Handling Child Custody, Abuse and Adoption Cases*, Section 14:8, at 799 (3d Ed.2009) (a stepparent adoption "is not easy, especially if the other birth parent is still living").

{¶ 43} Yet today's holding makes terminating a parent's right to withhold consent to adoption much easier, potentially allowing "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child," *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), to be severed based only on a single, unjustified failure to make a court-ordered child-support payment on time and in full. The majority's holding is untenable in light of the plain language of R.C. 3107.07(A), our case precedent construing it, and the constitutional protections in favor of parental rights.

{¶ 44} The analysis of the concurring opinion fares no better. It concludes that R.C. 3107.07(A) is ambiguous, and purporting to apply principles of statutory construction, it states that "we interpret the statute to provide that a parent must comply with the terms of the judicial decree for at least the entire year immediately preceding the filing of the adoption petition." Concurring opinion of Fischer, J., at ¶ 24. However, construing the statute to permit the termination of parental rights upon a single, unjustified failure to make a court-ordered child-support payment over a year-long period is manifestly unreasonable.

{¶ 45} Even if the concurring opinion were correct that the statute is ambiguous, the interpretation it selects is fundamentally wrong for three reasons.

{¶ 46} First, deciding that R.C. 3107.07(A) is susceptible to multiple reasonable constructions means that this court "must construe strictly [this] exception to the requirement of parental consent to adoption in order to protect the right of natural parents to raise and nurture their children." *In re Adoption of P.L.H.*, 151 Ohio St.3d 554, 2017-Ohio-5824, 91 N.E.3d 698, ¶ 23. And between a construction that protects the right to withhold consent unless the parent unjustifiably fails to make all court-ordered child-support payments throughout the year and one that revokes that right when the parent unjustifiably fails to make only one of those payments, the strictest construction is the one prescribing that a single payment of child support required by a judicial decree is sufficient to preserve the right to withhold consent. The interpretation of the concurring opinion therefore fails to acknowledge, much less safeguard, the fundamental right of a natural parent to the care and custody of his or her child.

{¶ 47} Second, the view of the concurring opinion fails to read R.C. 3107.07(A) as a whole and to construe its provisions together with other related statutes. *See Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 22 (the in pari materia canon of construction may be used to interpret ambiguous statutes). R.C. 3107.07(A) provides a second ground for denying a parent the right to withhold consent to adoption: when the parent "fail[s] without justifiable cause to provide more than de minimis contact with the minor * * * for a period of at least one year." This statute protects the right to withhold consent if the parent has *more than* de minimis contact while *not* requiring more than a de minimis payment of child support to preserve that right. But more importantly, R.C. 3107.07(A) was not enacted to enforce child-support obligations. As Justice Stewart's dissenting opinion points out, R.C. 2919.21(B) makes the failure to pay court-ordered child support a crime, and R.C. 2705.031

subjects that failure to a court's power of contempt. Dissenting opinion of Stewart, J., at ¶ 53. The court's decision to permit the termination of parental rights for unjustifiably missing a single child-support payment is plainly incongruous with the penalties imposed by these other statutes—the maximum criminal penalty for missing a single child-support payment is a 180-day jail term and fine of $1,000, R.C. 2919.21(G)(1); R.C. 2929.24(A)(1); R.C. 2929.28(A)(2)(a)(i), and the contempt statute permits a maximum penalty of $250 and 30 days in jail for the first offense, R.C. 2705.05(A)(1).

**{¶ 48}** Third, holding that R.C. 3107.07(A) is ambiguous means that this statute, which affects the fundamental rights of parents, is unconstitutionally vague and does not put a parent on fair notice that a single, unjustified failure to make a court-ordered child-support payment could result in the termination of parental rights. Although the vagueness doctrine is more commonly applied in reviewing criminal laws and First Amendment claims, we have recognized that the prohibition against vague laws also applies "in any case in which the statute challenged substantially affects other fundamental constitutional rights." *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 87; *see also United States v. Davis*, __ U.S. __, 139 S.Ct. 2319, 2323, 204 L.Ed.2d 757 (2019) ("In our constitutional order, a vague law is no law at all"); *Ashton v. Kentucky*, 384 U.S. 195, 200, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966) ("Vague laws in any area suffer a constitutional infirmity").

**{¶ 49}** "The void-for-vagueness doctrine reflects the principle that 'a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' " *Roberts v. United States Jaycees*, 468 U.S. 609, 629, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). It not only protects the public's right to "fair notice of what the law demands of

22

them," but also it maintains the separation of powers by ensuring that it is the legislative branch of government itself that writes the law. *Davis*, ___ U.S. at ___, 139 S.Ct. at 2325. When the legislature passes a vague law, it is not the role of this court "to fashion a new, clearer law to take its place." *Id*. at 2323.

{¶ 50} Therefore, if the concurring opinion were correct that R.C. 3107.07(A) is ambiguous, such that reasonable people could differ as to its meaning and application, then this statute has not given A.C.B.'s father fair notice that missing even a single child-support payment without justifiable cause would result in the termination of his parental rights. And it is not the role of this court to rewrite the statute to make it clear.

{¶ 51} In any case, the General Assembly unambiguously required a one-year period of nonpayment of child support in order to avoid the result reached by the court today. Here, A.C.B.'s father stayed in contact with the child but missed most, though not all, child-support payments required under the Indiana decree of dissolution during the one-year period preceding the filing of the adoption petition. But those facts alone do not trigger the presumption that he has abandoned his parental rights and responsibilities. It is only if he failed to make any child-support payments throughout that entire one-year period that the presumption would arise and authorize the probate judge to determine whether there was "justifiable cause" for the total nonpayment of child support. Therefore, A.C.B.'s father has retained his right to withhold consent to A.C.B.'s adoption. For these reasons, I dissent and would reverse the judgment of the court of appeals.

DONNELLY, J., concurs in the foregoing opinion.

———————————

**STEWART, J., dissenting.**

{¶ 52} "[T]he right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." *In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986), citing *Santosky v. Kramer*, 455 U.S.

745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). It is a constitutionally protected right. *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, 953 N.E.2d 302, ¶ 11. Because adoption terminates this fundamental right, any exception to the requirement of a parent's consent to the adoption of his or her child must be "strictly construe[d]" to protect that right. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 366, 481 N.E.2d 613 (1985); *see also In re Adoption of Masa* at 165; *In re Adoption of Schoeppner*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976) (holding that incarceration does not, as a matter of law, constitute a "willful failure" to support a child for purposes of the statutory-consent requirement).

{¶ 53} R.C. 3107.07(A) sets forth Ohio's statutory exceptions to a parent's right to withhold consent to the adoption of his or her child. It is a remedy for children abandoned by a parent. R.C. 3107.07(A) was not enacted as a means to enforce child-support obligations. *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, ¶ 11. Nor was it enacted to punish a parent for not fully complying with court-ordered child-support obligations. There are other statutes that do this. R.C. 2919.21(B) criminalizes a parent's failure to provide child support as established by a court order. *See State v. Pittman*, 150 Ohio St.3d 113, 2016-Ohio-8314, 79 N.E.3d 531, ¶ 18. And R.C. 2705.031 authorizes contempt actions for failure to pay child support. *See Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 16.

{¶ 54} Against this backdrop, we are asked to determine—in the context of a situation involving court-ordered child-support payments—what R.C. 3107.07(A) means in setting forth that a parent's consent to the adoption of a minor child is not required when the court "finds by clear and convincing evidence that the parent has failed without justifiable cause to * * * provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition." In other words, what constitutes *failure* and thereby necessitates the justifiable-cause

24

analysis? Although the majority makes a point of noting that A.C.B.'s father, B.D., did not "come close" to paying the full amount of child support he owed, majority opinion at ¶ 19, while also calling attention to the fact that B.D's lone payment was made only two days before the adoption petition was filed, the majority ultimately holds that anything short of making *all* child-support payments is a failure to provide support, necessitating a justifiable-cause analysis. I disagree.

{¶ 55} In *In re Adoption of Holcomb,* we held that the applicable version of R.C. 3107.07(A) authorized adoption without a natural parent's consent only in cases in which there was a "complete absence of communication." 18 Ohio St.3d at 366-367, 481 N.E.2d 613. The version of R.C. 3107.07(A) in effect at the time provided that a parent's consent to the adoption of his or her child was not required " 'when it is alleged in the adoption petition and the court finds * * * that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition.' " *Id.* at 366, quoting former R.C. 3107.07, Am.S.B. No. 205, Section 1, 138 Ohio Laws, Part I, 700.

{¶ 56} We found that the General Assembly adopted an objective standard for probate courts to use when analyzing a nonconsenting parent's communication with a child. *Id.* By not including qualifying language before "communicate," the legislature "opted for certainty" and "purposely avoided the confusion which would necessarily arise from the subjective analysis and application of terms such as failure to communicate *meaningfully*, *substantially*, *significantly*, or *regularly*." (Emphasis sic.) *Id.* We observed that it is not the role of the courts to add language to the statute, *id.*, and for this reason, we held that pursuant to the explicit language of that version of R.C. 3107.07(A), only a "complete absence of communication for the statutorily defined one-year period" was sufficient to allow for an adoption without a parent's consent, *id.* at 366-367.

{¶ 57} The same analysis is relevant to a parent's provision of maintenance and support. By not including terms such as "completely," "significantly," "meaningfully," or "more than de minimis," the legislature adopted an objective standard for courts to use when determining whether a parent has failed to provide maintenance and support as required by law or judicial decree under R.C. 3107.07(A). It is also worth noting that since our decision in *In re Adoption of Holcomb*, the General Assembly has amended R.C. 3107.07(A) on multiple occasions, and while the current version now requires a parent to have "more than de minimis contact" with his or her child, the legislature has not made a corresponding change to the "maintenance and support" requirement.[1] The majority opinion concludes that qualifying language such as meaningfully, substantially, significantly, or regularly is unnecessary because support "is measured by what is required by law or judicial decree." Majority opinion at ¶ 14. I do not agree that this phrase constitutes a measurement. "As required by law or judicial decree" denotes the mechanisms by which support is required and rendered. To construe the phrase as *the* measure of support required necessarily elevates one form, "judicial decree," over the other, "as required by law." Nothing in the statute indicates that this is what the legislature intended.

{¶ 58} Under the majority's view, failure to support as required by judicial decree is a simple and fixed measure: pay anything less than 100 percent of your court-ordered child support and you have failed to provide support as required by judicial decree. But how would a failure to support "as required by law" be

---

1. Effective April 7, 2009, the relevant language in R.C. 3107.07(A) was amended to its current version. 2008 Sub.H.B. No. 7. The General Assembly changed the law to require that courts find that a parent has failed without justifiable cause to maintain contact with a minor child or to provide for the maintenance and support of a minor child by "clear and convincing evidence." Additionally, the General Assembly changed "communicate" to "provide more than de minimis contact." In so doing, it shifted from an objective to a subjective test regarding a parent's communication or contact with a child. Yet the legislature made no such change to a parent's maintenance-and-support requirement.

measured by anything other than a complete absence of support? Did the General Assembly intend to impose a more exacting standard on parents who support their children pursuant to a judicial decree than on parents who support their children based on the duty to support as required by law? Because the legislature did not differentiate between the two means by which a parent can provide support, there is no meaningful distinction indicating that it intended for compliance with one form of support to be analyzed or scrutinized more strictly than the other. For this reason, I believe it is a mistake to construe a child-support payment, even a partial one, made pursuant to a judicial decree as anything other than providing maintenance and support for purposes of preserving a parent's right to withhold consent to the adoption of his or her child under R.C. 3107.07(A).

{¶ 59} Admittedly, the facts of this case engender little sympathy for B.D. as a parent. But neither sympathy for B.D. nor the derision the majority exhibits for B.D.'s payment history is a factor to be considered in this analysis. B.D. readily acknowledged his lack of full compliance with the child-support order. But suppose B.D. had come close to 100 percent compliance with the judicial decree, missing only 5 percent of his court-ordered support payments? Under the majority's view, B.D. would still have failed to provide support for his child under the statute, necessitating a determination by the probate court whether B.D.'s failure to pay the 5 percent was justifiable. And suppose, as found by the probate court in this case, B.D. had no justifiable cause for falling 5 percent short of his obligations? Under the majority's view, despite the fact that B.D. paid 95 percent of his court-ordered support payments, he would have failed to provide maintenance and support as required by judicial decree and would have no justifiable cause for his failure. Could the probate court find justifiable cause when there is none?

{¶ 60} I recognize the value of a probate court making justifiable-cause determinations on a case-by-case basis. But under this statute, has a parent who

has made less than 100 percent of his court-ordered child-support payments, with no justifiable cause for falling short, forfeited his right to withhold consent to the adoption of his child? Or has he just not fully complied with the court's child-support order? The majority finds the former.

{¶ 61} I acknowledge a court's trepidation in appearing to countenance or permit de minimis or sporadic payments of child support, particularly in instances when a parent has the financial ability to comply fully with a child-support order. But as previously mentioned, there are statutes in place to remedy the failure to fully comply with court-ordered support. Potentially having one's parental rights terminated is not one of those remedies. I also acknowledge that, in isolation, the majority's view of the meaning of the phrase "as required by * * * judicial decree" is not unreasonable. By the majority's analysis, support required by judicial decree is easily and objectively measured. Yet, support "as required by law" remains an entirely subjective measure. This distinction further underscores why the majority's position, in context, is not in keeping with recognizing a parent's fundamental right to raise and care for his or her child. Any exception to the consent requirement for adoption must be strictly construed to protect that right. The majority's position wholly fails to do so.

{¶ 62} Furthermore, the majority's interpretation of the statute renders the phrase "for a period of at least one year immediately preceding * * * the filing of the petition" meaningless. Under the majority's view, once a payment—or even part of a payment—required pursuant to a support order is missed, the parent has failed to provide maintenance and support as required by judicial decree. Knowing the parent has missed a payment or any portion of a payment, a petitioner can, and probably should, immediately file the adoption petition referencing that missed or partial payment, which would inherently be within the one-year period preceding the petition. This would of course render the one-year period illusory. *See Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d

448, ¶ 21, quoting *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 373, 116 N.E. 516 (1917) (we must "evaluate a statute 'as a whole and giv[e] such interpretation as will give effect to every word and clause in it. No part should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative' ").

{¶ 63} R.C. 3107.07(A) establishes the criteria courts must use to determine whether a parent has forfeited his or her parental rights. The right to parent is a fundamental one, and this court must strictly construe any exception to a parent's right to object to the adoption of his or her child. *In re Adoption of Holcomb*, 18 Ohio St.3d at 366, 481 N.E.2d 613. I would hold that under R.C. 3107.07(A), in the context of a case with court-ordered child support, a parent who makes a child-support payment or a portion of a child-support payment pursuant to a judicial decree during the one-year period at issue has not failed to provide maintenance and support and thus maintains the right to withhold consent to the adoption of his or her child. Because the majority holds otherwise, I dissent.

––––––––––––––––––––

The University of Toledo College of Law Legal Clinic, Robert S. Salem, and April Johnson and Brianna Stephan, Certified Legal Interns, for appellant.

Semro Henry & Barga, Ltd., James L. Rogers, and Katrin E. McBroom for appellee.

––––––––––––––––––––