[Cite as *In re Adoption of M.G.S.*, 2024-Ohio-322.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE:

THE ADOPTION OF M.G.S.

C.A. No.     30647

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     2022 AD 002

DECISION AND JOURNAL ENTRY

Dated: January 31, 2024

STEVENSON, Judge.

{¶1}     Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Probate Division, that found that his consent to the adoption of his biological child was not necessary as his lack of contact with his child was not justified by mother's alleged refusal to permit him to communicate with her.  This Court affirms.

I.

{¶2}     Mother and Father are the natural parents of M.G.S., born March 26, 2012. Although the parents were never married, Father established paternity at the time of the child's birth.  Mother and Father ended their romantic relationship when their daughter was around a year and a half old.  Father filed an action in the domestic relations court seeking parenting time with the child.  He dismissed his case two weeks later after informing the domestic relations court that he and Mother had reached an informal agreement as to visitation.

**{¶3}** Mother and Father each went on to marry other people. Father and his wife have two children. M.G.S. has resided with Mother and Petitioner-Stepfather since 2016. On January 5, 2022, when the child was almost ten years old, Stepfather filed a petition to adopt the minor. Mother consented to the adoption. Stepfather alleged that Father's consent was not required pursuant to R.C. 3107.07(A) because Father had failed to have more than de minimis contact with the child without justifiable cause during the relevant statutory one-year lookback period. Although Stepfather also alleged Father's failure to provide maintenance and support for the child, he later withdrew that allegation.

**{¶4}** Father filed an objection to the petition. After a hearing, the magistrate found that Father had not had more than de minimis contact with M.G.S. during the relevant time period; that he had no justifiable cause for his failure to maintain contact; and that his consent to the adoption was, therefore, not required. Father timely objected to the magistrate's decision; the probate court overruled Father's objection and ordered that Father's consent to adoption of M.G.S. was not required. Father timely appealed and raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE FINDINGS OF THE TRIAL COURT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

**{¶5}** Father argues that the probate court's finding that his consent to adoption of his biological child was not required is against the manifest weight of the evidence. While he argues that his limited contact with the child was meaningful, the crux of his argument is that he had justifiable cause for having no more that de minimis contact with M.G.S. during the year prior to Stepfather's filing of his petition for adoption. This Court disagrees.

**{¶6}** Generally, the biological parents of a child must consent to the child's adoption by another person. R.C. 3107.06. R.C. 3107.07(A) provides exceptions to the parental consent requirement "when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition[.]"[1] As the statute is written in the disjunctive, the failure of either contact or support will obviate the need for the respondent-parent's consent. *In re Adoption of F.A.*, 9th Dist. Summit No. 27275, 2015-Ohio-2249, ¶ 8. Clear and convincing evidence is evidence that will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985).

**{¶7}** The Ohio Supreme Court has recently clarified that courts must apply a three-part test to determine whether a respondent-parent's consent to adoption is necessary, irrespective of whether the petitioner has alleged unjustifiable failure to provide support or to maintain contact with the child. *In re Adoption of A.K.*, 168 Ohio St.3d 225, 2022-Ohio-350, ¶ 17. The original inquiry was simply whether the petitioner established the two statutory elements. *Id.* at ¶ 16. Here, that is whether Father failed to have more than de minimis contact with the child during the one-year lookback period, and if so, whether justifiable cause existed for that failure. R.C. 3107.07(A).

**{¶8}** The recently added initial step requires the court to consider whether a law or court order limited or curtailed the respondent-parent's obligation regarding support or contact. *In re*

---

[1] Section 3107.07(A) provides an alternative one-year lookback period preceding "the placement of the minor in the home of the petitioner[,]" which provision is not relevant to this case.

*Adoption of A.K.* at ¶ 17-18. In other words, "a probate court should not dispense with the requirement of a parent's consent when the parent abided by a court order prohibiting the parent from doing the very act that the statute requires in order for the parent to maintain his or her right to consent to the adoption of his or her minor child." *Id*. at ¶ 18. In this way, a court order expressly imposing no obligation on a parent to provide child support or precluding the parent's contact with the child would create "an automatic exemption from the trial court's justifiable-cause analysis" and end further analysis regarding whether the parent's consent to adoption is necessary. *Id.* at ¶ 14, 16.

{¶9} As to the first prong of the three-prong test, the Ohio Supreme Court recognized that the exemption from the exception to the consent requirement would naturally be implicated "when a [respondent-]parent can point to a court order that required no maintenance and support [or no contact with the child] * * *." *Id.* at ¶ 16-17. However, the petitioner who alleges an R.C. 3107.07(A) exception to the consent requirement bears the burden of proof to demonstrate both (1) the failure to provide support or have more than de minimis contact with the child, and (2) that there was not justifiable cause for the failure. *In re Adoption of F.A.*, 2015-Ohio-2249, at ¶ 7. *See also In re A.L.H.*, 9th Dist. Medina Nos. 18CA0084-M and 18CA0085-M, 2020-Ohio-3527, ¶ 8 ("The burden of proof remains at all times with the petitioner to show by clear and convincing evidence the lack of either the requisite contact or support, as well as the lack of justifiable cause."). This Court added:

> Even so, in the face of evidence of a lack of the requisite contact or support, the respondent-parent may not simply remain mute, but must rather demonstrate some facially justifiable cause for the parent's failure. Nevertheless, while the respondent-parent may acquire a burden of going forward, the ultimate burden of proof remains with the petitioner.

(Internal citations omitted) *Id*.

{¶10}  Appellate review of the probate court's determinations regarding the two statutory elements is subject to different standards.  As to the trial court's determination whether the respondent-parent had more than de minimis contact with the child or provided support during the lookback period, this Court reviews for an abuse of discretion.  *In re Adoption of F.A.* at ¶ 9.  A trial court abuses its discretion when its determination is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*,  5 Ohio St.3d 217, 219 (1983).

{¶11}  On the other hand, "[w]hether justifiable cause has been proven by clear and convincing evidence is a separate issue the determination of which will only be reversed on appeal if it is against the manifest weight of the evidence."  (Internal quotations omitted)  *In re Adoption of F.A.* at ¶ 9.  When addressing a manifest weight challenge, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered."  (Internal quotations omitted.)  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.  When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact."  *Id.* at ¶ 21.

{¶12}  If the petitioner has demonstrated that the respondent-parent failed to provide support or have more than de minimis contact with the child during the relevant time period, the probate court must next consider whether the parent had justifiable cause for failing to do so.  *In re A.L.H.* at ¶ 9.  R.C. Chapter 3107 does not define "justifiable cause."  Courts construe the term to encompass a parent's ability to financially support or maintain contact with a child.  *In re Adoption of B.A.A.*, 9th Dist. Wayne No. 16AP0073, 2017-Ohio-8137, ¶ 15, citing *In re Adoption of Masa*, 23 Ohio St.3d 163, 167 (1986).  The *Masa* court reasoned that the law "ought not ask the

impossible as a condition of preserving fundamental parental rights[.]" *Id*. To that end, a noncustodial parent generally has justifiable cause for failing to maintain more than de minimis contact with the child "when the custodial parent significantly interferes with or significantly discourages communication [or contact]." *In re Adoption of M.G.B.-E.*, 154 Ohio St.3d 17, 2018-Ohio-1787, ¶ 39. "Justifiable cause" is a flexible term and must be determined based on the facts of the specific case. *In re Adoption of Holcomb*, 18 Ohio St.3d at 367. The reviewing court must bear in mind that "[t]he probate court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony." *Id*.

{¶13} In this case, the relevant lookback period was January 5, 2021, to January 5, 2022, when Stepfather filed the petition seeking to adopt M.G.S. Father paid at least a portion of his court-ordered child support during that time, and the petitioner withdrew his allegation of failure to provide support and maintenance as a ground for obviating the requirement of Father's consent. There was no court order prohibiting Father from having contact with the child. Accordingly, the only issues are whether Father failed to have more than de minimis contact with M.G.S., and, if so, whether he had justifiable cause for that failure.

De minimis contact

{¶14} The parents ended their romantic relationship when the child was about a year and a half old. Soon after that, Father sought a court order from the domestic relations court to establish his parental rights and a parenting time schedule. As the parents were able to reach an agreement regarding sharing time with the child, Father dismissed his case in April 2013, without securing a court order addressing his visitation. While he had a relationship with the child for the next couple years, Father admits that his regular visits with the child stopped in February 2016, shortly before the child's fourth birthday and shortly after his current wife gave birth to their older child.

{¶15} At some time during 2016, Mother asked Father to watch M.G.S. while Mother worked because Father's seasonal employment had ended. At the time, the paternal grandmother was watching the child but Mother thought it would be a good opportunity for Father to spend more time with the child. Although Father was available to do so, he admitted that he refused because he was paying child support and did not believe he should have to provide both financial support and "baby-sitting" for his daughter. Although Mother offered to drop off and pick up the child, as well as pack food for her to eat while with Father, thereby alleviating any financial burden on him, Father nevertheless refused to watch the child while he was not working.

{¶16} Father next saw M.G.S. in 2019, when he unexpectedly ran into her while the child was attending a fair with her paternal grandmother. After that chance encounter, the paternal grandmother allowed Father to spend an hour in her home visiting with the child.

{¶17} Father had no further in-person contact with M.G.S. until 2022, during another chance encounter, this time running into Mother and the child at Walmart. Mother spoke cordially with Father, while the child hid behind a toy display. Father admitted that M.G.S. was "very scared" of him at that time, although he did not understand why. The two did not have any conversation or interaction during the encounter.

{¶18} Otherwise during the one-year lookback period, Father had negligible alternative forms of contact with the child. He sent his standard yearly birthday text to Mother's phone but he never called to ask to speak with the child. Father admitted that since Christmastime in 2015, he did not send any cards, gifts, or anything else that the child would understand came from him.

{¶19} The record supports the probate court's finding that Petitioner demonstrated by clear and convincing evidence that Father failed to have more than de minimis contact with M.G.S.

during the relevant time period. That determination is reasonable in light of the evidence. Accordingly, the probate court did not abuse its discretion in that regard.

Justifiable cause

{¶20} Father testified at the hearing that he only failed to have contact with the child because Mother "denied [him] every chance that is feasibly possible." Specifically, he testified that he is not allowed to have the child's cell phone number, that he may not be in his mother's home when the child is visiting her paternal grandmother, and that Mother consistently tells him that the child has no response to his texts. Accordingly, Father "demonstrate[d] some facially justifiable cause for [his] failure" to have more than de minimis contact with M.G.S. *See In re Adoption of A.L.H.* at ¶ 8.

{¶21} Petitioner questioned Father on cross examination during his case in chief. Father testified that he had sought court ordered parenting time with the child in 2013, but that he dismissed that case because he and Mother had been able to reach an agreement as to visitation. Although Father testified that Mother terminated his visits in February 2016, that was around the same time that Mother had asked Father to watch the child on a daily basis while Mother worked. Father admitted that he refused to watch M.G.S. then, even though he was available to do so, because he was paying child support and did not believe he should also have to provide care for her at the same time.

{¶22} Both parents agreed that after Father refused to watch the child in 2016, their relationship became strained. Mother testified that as Father's then-girlfriend had recently had a baby and Father began working plowing snow, Father often declined visits because of time constraints. Thereafter, communications between the parents "faded." Although Father testified that Mother terminated his visits, Mother testified that Father was the one who ceased maintaining

a relationship with the child. He never asked to modify the visitation schedule to better accommodate his routine. He stopped sending the child any gifts. By 2017, Father had stopped contacting Mother at all.

{¶23} The ten-year-old child apparently had her own cell phone at some point. Although Father did not have that phone number, he at all times had Mother's cell phone number. He admitted that Mother never blocked his calls. Moreover, Father admitted that he knew the child's address. Nevertheless, he never sent her any cards or letters or attempted to see the child there.

{¶24} Petitioner presented evidence that Father texted Mother on January 31, 2021, within the relevant lookback period, to ask if he could claim the child for tax purposes. Mother testified that Father did not inquire about visiting the child at that time. About six months later, Mother contacted Father to ask him to co-sign the child's passport application. Father refused to do so unless Mother presented him with a written document setting forth his ability to see the child. Father made no proposals, however, regarding his visitation schedule.

{¶25} Given that Father had not had any in-person contact with the child for many years, and in consideration of the child's emotional well-being, Mother told Father that he could begin having contact with his daughter if the two of them engaged in co-parenting classes and if Father and the child engaged in counseling together. Mother believed it was important for Father and her to develop skills to enable them to cooperate as a parenting team to address any matters involving the child. In addition, in recognition of M.G.S.' hesitancy to spend time with Father, a man with whom she had had very limited interactions, Mother believed that a counselor could facilitate Father's reintegration into the child's life in a safe and comfortable manner. Mother sent Father a link to information regarding co-parenting classes and offered to pay for them. At most, Father

told Mother he would think about it. While he told the paternal grandmother that he would be willing to engage in classes and counseling, he admitted that he never conveyed that to Mother.

{¶26} Although he testified that Mother was preventing his contact with the child, Father admitted that he did not seek court intervention to obtain a visitation order. Father testified that he did not initiate legal proceedings because he believed he could only do so with the assistance of an attorney. He testified that he could never afford legal services because his work in seasonal construction jobs, receipt of unemployment payments in the off season, and having two children with his now-wife kept him "under financial constraints[.]" He admitted, however, that he purchased a swimming pool for his current wife and children in 2018 or 2019, and that he could have used those funds to pursue visitation with M.G.S. instead. In any event, Father testified that he never tried to contact an attorney to learn what he needed to do to obtain court-ordered visitation with the child.

{¶27} In addition to claiming that he lacked the financial ability to seek court intervention, Father testified that he did not want to pursue legal action because he did not want to jeopardize his mother's relationship with M.G.S. The paternal grandmother testified that she has had regular contact with the child her whole life. Mother testified that she allows the child to visit with her grandmother whenever the grandmother asks to see her. When asked on cross examination whether she would allow M.G.S. to attend a family gathering with her stepmother and half siblings, Mother testified she would. Although the paternal grandmother testified that Mother has forbidden Father's wife and children to be in contact with the child, she immediately thereafter admitted that when M.G.S. proposed a sleepover with her half-siblings at the grandmother's home in May 2022, Mother gave her permission.

{¶28} Mother emphasized in her testimony that she has never forbidden Father from having a relationship with the child. She testified that her insistence on joint counseling for Father and M.G.S. arises out of concerns for the child's comfort. For seven years, Father failed to pursue visitation with the child. Father admitted that the child is not comfortable with him. He testified that counseling or meeting with the child with familiar people nearby would be a good plan to "initiate a [ ] fatherly friendship with her again[.]" Mother testified that she repeatedly proposed services at her expense to facilitate reestablishing Father's relationship with the child. Father never committed to engaging in counseling or offered any counterproposals to reinstate visits.

{¶29} Based on a thorough review of the evidence, this is not the exceptional case in which the trier of fact clearly lost its way and created a manifest miscarriage of justice by finding that Petitioner had proved a lack of justifiable cause by Father for failing to have more than de minimis contact with M.G.S. during the requisite time period. Despite having contact information for Mother and the child, Father did not request any visits with his daughter. He did not pursue court intervention to establish a visitation order. He used funds he admitted could have been used for legal assistance for a family swimming pool. He never invited M.G.S. over to swim with her half-siblings. Father refused to co-sign for the child's passport unless Mother put in writing a commitment to allow him to visit with M.G.S. However, he proposed no terms for visitation and did not request a visit with the child at that time. Father understood that the child was uncomfortable with him after a seven-year absence from her life. Nevertheless, he never responded to Mother's offers to pay for Father-child counseling to reestablish their bond in an emotionally safe and healthy manner. Under the circumstances, the probate court's finding of Father's lack of justifiable cause is not against the manifest weight of the evidence.

Conclusion

**{¶30}** For the above reasons, the probate court did not err by finding that Father's consent to the adoption of M.G.S. is not required pursuant to R.C. 3107.07(A). Father's assignment of error is overruled.

## III.

**{¶31}** Father's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Probate Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

SUTTON, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶32} I respectfully dissent on two grounds.

{¶33} First, I believe that the probate court improperly shifted the burden of proof to Father to establish he had justifiable cause for failing to have more than de minimis contact with M.G.S. Relying on a Sixth District case, the probate court expressly asserted that "the burden shifts" to the respondent parent after the petitioner "makes the showing of failure to contact the child[.]" *See In re Adoption of T.U.*, 6th Dist. Williams No. WM-19-012, 2020-Ohio-841, ¶ 15. The majority in this case correctly states that the burden of proving by clear and convincing evidence both the lack of contact and lack of justifiable cause remains with the petitioner. *In re Adoption of A.L.H.*, 9th Dist. Medina Nos. 18CA0084-M and 18CA0085-M, 2020-Ohio-3527, ¶ 8. While Father acquired a "burden of going forward" once Petitioner proved his lack of requisite contact with the child, Father had only to show "some facially justifiable cause" for his failure of contact. *Id*.

{¶34} I believe the probate court misapplied the nuanced burden acquired by Father. The trial court found that Father "presented no evidence showing that [Mother] took action to significantly impair his ability to have a relationship with [the child]." However, Father's burden was merely to present "some facially justifiable cause" and he did so by citing examples whereby he believed Mother significantly interfered with or discouraged his communication or contact with M.G.S. At that point, it again fell to Petitioner to prove by clear and convincing evidence that Father's assertions of interference were not significant enough to rise to the level of justifiable cause for his absence from the child's life.

{¶35}  Second, I would conclude that Petitioner failed to provide clear and convincing evidence of a lack of justifiable cause by Father for his failure to have contact with the child. Petitioner elicited testimony from Father on cross-examination regarding Mother's efforts to exclude him from the child's life.  For example, Father testified that Mother made excuses for why the child was not available to speak with Father when he called and that she routinely told Father that M.G.S. had no response to his texts.  In addition, Father testified that Mother insisted that the paternal grandmother not allow Father to be present when she has the child or discuss Father with M.G.S.  The paternal grandmother confirmed that she had to ensure that Father had left her home prior to the child's arrival for a visit.

{¶36}  Both parents agreed that their relationship became strained in 2016.  That was a time of significant change for both parents.  Father had a baby with his then-girlfriend and Petitioner moved in with Mother.  During that same time, Father's regular visits with the child ceased.  Although unclear how or why it occurred, Mother prohibited the paternal grandmother from including Father in her visits with M.G.S.  Father testified that he complied with the restriction on his ability to spend time with the child at his mother's home for fear that Mother would restrict the child's contact with the paternal grandmother as well.  Although Mother testified that she has allowed liberal visitation between the child and her paternal grandmother whenever requested during the past ten years, she also alluded to the child's recent discomfort as the paternal grandmother has sought weekly visits and begun discussing the adoption case with the child.

{¶37}  I believe that Father's concerns that his attempts to see the child might impact his mother's ability to continue her relationship with the child were reasonable.  I further believe that Mother took affirmative measures to restrict Father's contact with M.G.S.  While it is unclear why Father's visits with the child initially ceased, Mother ultimately placed conditions on his ability to

reestablish contact. Specifically, instead of providing Father with his requested written assurance that he could visit with the child, Mother required that Father first engage in counseling with M.G.S. Mother further expressed the desire that she and Father engage in parenting classes even though Father was raising two other children with his current wife, with no evidence of impropriety.

{¶38} Petitioner had the burden of proving by clear and convincing evidence that Father did not have justifiable cause for his failure to have contact with M.G.S. during the relevant time period. Given the parents' competing testimony regarding the reasons for Father's absence from the child's life and the viability of reestablishing the father-child relationship, I do not believe that Petitioner's evidence met the standard required to "produce in the mind of the trier of facts a firm belief or conviction" as to Father's lack of justifiable cause. *See In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985). In my mind, Petitioner's evidence leaves open the reasonable belief that Mother significantly interfered, or at a minimum, significantly discouraged Father's contact with M.G.S. Accordingly, I would conclude that the probate court's finding that Father lacked justifiable cause for his failure to maintain contact with the child during the year prior to the filing of the petition is against the manifest weight of the evidence.

{¶39} For the above reasons, I dissent. I would reverse and remand the matter to the probate court for further proceedings.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

CORINNE HOOVER SIX, Attorney at Law, for Appellee.