[Cite as *In re Adoption of S.G.L.*, 2024-Ohio-2248.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: ADOPTION OF S. G. L.

C.A. No.     30485

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     2021 AD 00121

DECISION AND JOURNAL ENTRY

Dated: June 12, 2024

FLAGG LANZINGER, Judge.

{¶1}     Appellant Father (alternatively, "Respondent") appeals the judgment of the Summit County Court of Common Pleas, Probate Division, that found that his consent to the adoption of his child by Appellee Stepfather (alternatively, "Petitioner") was not required because Father had failed without justifiable cause to provide for the child's maintenance and support during the requisite statutory time period.  This Court affirms.

I.

{¶2}     Mother and Father are the biological parents of S.G.L, born August 5, 2014.  The parents divorced two years later.  The domestic relations court awarded legal custody of the child to Mother, granted Father supervised visitation for no more than two hours twice a week, and ordered Father to pay child support in the amount of $407.65 per month.

{¶3}     Several years later, Mother married Stepfather.  A year and a half later, Stepfather filed a petition to adopt S.G.L.  He alleged that Father's consent to the adoption was not required

because Father had failed without justifiable cause both to have more than de minimis contact with S.G.L. and to provide maintenance and support for the child during the statutory one-year lookback period. Mother consented to Stepfather's adoption of the child. While the document is not contained in the record, the probate court noted, and the parties agreed, that Father properly filed an objection to the adoption petition.

{¶4}    The magistrate held a hearing at which Petitioner withdrew his allegation that Father failed to have more than de minimis contact with S.G.L. At the conclusion of the hearing, the magistrate found that Stepfather had met his burden of proving by clear and convincing evidence that Father failed without justifiable cause to provide support and maintenance for the child during the one-year lookback period. The magistrate's decision therefore ordered that Father's consent to the child's adoption was not required. Father timely objected to the magistrate's decision.

{¶5}    Father's objection in substantial part challenged the magistrate's finding that Father lacked justifiable cause for failing to provide support for S.G.L. during the one-year lookback period. He further argued that the magistrate erred in finding no payment of child support during that time because Father expected to obtain new evidence showing that Mother would receive money in the future that he believed would be applied retroactively to Father's child support obligation during the lookback year. Stepfather responded in opposition, arguing that the evidence established that Father made no child support payments and lacked justifiable cause for his failure because he continued to operate his business and maintain significant cash flow while using his business account for personal expenses.

{¶6}    Father moved the probate court for a hearing to consider newly acquired evidence relating to Mother's anticipated receipt of Father's forthcoming unemployment benefits.

Petitioner responded in opposition, calling Father's argument "specious" based on Father's long history of failing to pay child support well before and during the entire lookback period from October 21, 2020, through October 21, 2021. Father replied, arguing that the probate court should consider his unemployment benefits to be paid to Mother as having retroactively met his support obligation during the year prior to the filing of Stepfather's petition for adoption.

{¶7} The probate court implicitly denied Father's motion for a hearing, finding that Father's proffered evidence was "not new evidence of substantial material fact in deciding whether he fulfilled his obligation to pay more than de minimis support and maintenance for [the child]." While the probate court found that any money the child support enforcement agency ("CSEA") may have received from Father's intercepted unemployment benefits would only be credited to his arrearage of $31,759.39 and not current support, it further found that Father had not paid any child support during the year prior to Stepfather's filing of his petition for adoption. In addition, the trial court implicitly found that Father lacked justifiable cause for his failure to provide support and maintenance for S.G.L. based on substantial deposits of money into Father's business account, Father's unexplained significant cash withdrawals from that account, and the domestic relations court's more than 50% increase in his child support obligation at the time Father claimed his business was failing.

{¶8} The probate court overruled Father's objection. It found that Father's consent to the child's adoption was not required pursuant to R.C. 3107.07(A). Father timely appealed, raising one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE [PROBATE COURT] COMMITTED ERROR BY FAILING TO APPLY THE APPROPRIATE BURDEN OF PROOF ON THE

PETITIONER/STEPFATHER AND BY REFUSING TO CONSIDER FATHER'S INTERCEPTED UNEMPLOYMENT BENEFITS AS SUPPORT PAYEMENTS WITHIN THE YEAR PRECEDING THE PETITION FOR ADOPTION.

{¶9} Father makes three general arguments under the umbrella of his assignment of error. First, he argues that the probate court's finding that he lacked justifiable cause for failing to provide support and maintenance for the child during the requisite statutory time period is against the manifest weight of the evidence. Second, he argues that the trial court abused its discretion by finding that funds, namely Father's unemployment benefits disbursed to Mother after the lookback period, did not constitute the provision of support and maintenance for the child for purposes of R.C. 3107.07(A). Third, Father argues that the probate court both abused its discretion and erred as a matter of law in finding that "any amount of monetary contribution for child support in the year prior to the petition that falls short of paying 100% of accumulated arrearages is a failure to provide for the maintenance and support [of the child]."

{¶10} This Court is not persuaded by Father's arguments. We discuss them out of order to facilitate our review.

Disbursement of unemployment benefits

{¶11} Generally, the biological parents of a child must consent to the child's adoption by another person. R.C. 3107.06. R.C. 3107.07(A) provides exceptions to the parental consent requirement "when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition[.]" As the statute is written in the disjunctive, the failure of either contact or support will obviate the need for the respondent-parent's

consent. *In re Adoption of F.A.*, 9th Dist. Summit No. 27275, 2015-Ohio-2249, ¶ 8. Clear and convincing evidence is evidence that will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985).

**{¶12}** This Court reviews the probate court's determination that a respondent-parent failed to provide maintenance and support for the child during the requisite statutory period for an abuse of discretion. *In re Adoption of M.G.S.*, 9th Dist. Summit No. 30647, 2024-Ohio-322, ¶ 10, citing *In re Adoption of F.A.* at ¶ 9. A trial court abuses its discretion when its determination is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶13}** The statutory lookback period in this case encompassed October 21, 2020, to October 21, 2021. Father admits that he did not contribute financially to the child's support during that time. He argues that, because he applied for unemployment benefits within that period, and was approved for assistance covering almost ten months of the lookback period, the probate court unreasonably failed to recognize his provision of support for the child, even though no unemployment benefits were actually paid until five months after the end of the relevant statutory window.

**{¶14}** Irrespective of the specific issue presented for appellate review, the Ohio Supreme Court has consistently found the statutory language in R.C. Chapter 3107 concerning adoption matters to be unambiguous and has, therefore, applied the plain language of the text in its analyses. *See e.g., In re Adoption of A.C.B.*, 159 Ohio St.3d 256, 2020-Ohio-629, ¶ 8, 14 (addressing a parent's maintenance and support obligation); *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, ¶ 1 (addressing zero-support orders in judicial decrees); *In re Adoption of H.P.*, 171

Ohio St.3d 453, 2022-Ohio-4369, ¶ 28 (addressing the status of a putative father). The relevant portion of R.C. 3107.07(A) applicable to Father's argument is the failure without justifiable cause to pay support "for a period of at least one year *immediately preceding*" Petitioner's filing of the adoption petition. (Emphasis added.)

{¶15} The plain language of the statute requires a petitioner to present clear and convincing evidence of, and the probate court to so find, a lack of payment of support during the year prior to the date the petitioner files the adoption petition. There is no statutory mechanism to allow a respondent-parent to cure his failure to support his child by subsequently providing maintenance and support after the relevant lookback period. To read such a curative measure into the statute where one does not exist would entail judicially inflating the interests of a biological parent above the equally "paramount" interests of the child at issue. *See In re Adoption of A.C.B.* at ¶ 13 (recognizing the "difficult balancing [by the legislature] involving the rights of the child, the biological parents, and the potential adoptive parent" and declining to interfere with the policy judgments entrusted to the legislature).

{¶16} Petitioner presented clear and convincing evidence demonstrating that Father did not provide any maintenance or support for S.G.L. during the year immediately preceding the filing of Stepfather's petition. Father conceded below and on appeal that he made no child support payments during the lookback period. He argues that this Court should expand the plain language of the statute to accord a retroactive effect to later-made support payments and conclude that his consent to the child's adoption was required. We decline to do so as "our role is to defer to the legislative judgment and apply the language of the statute." *See id.* Moreover, in the absence of an express declaration that a statute applies retroactively, it presumptively has only prospective application. *Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860, ¶ 28. Accordingly, If CSEA

did not receive Father's unemployment benefits until after Stepfather filed his petition, as Father admits, Father failed to provide maintenance and support for the child during the requisite statutory period.

Payment of child support arrearage

{¶17} Father next argues that the probate court erred by finding that CSEA necessarily would have only applied Father's $14,931 unemployment benefits to his almost $32,000 child support arrearage. Assuming without deciding that the probate court's understanding was erroneous when it opined how CSEA applies payments in excess of the monthly amount due when an obligor has a child support arrearage, any error was harmless in this case.

{¶18} Father's current monthly child support obligation at the time CSEA intercepted his unemployment benefits was $638.33, plus $21.40 cash medical support; $127.67 toward arrearages; and an administrative fee, for a total monthly obligation of $803.15. There was no evidence presented to explain how CSEA would have accounted for the $14,931 payment received from Father's unemployment benefits. CSEA's accounting methods are irrelevant here, however, because Father admits that that agency did not receive any funds during the statutory lookback period. As explained above, the plain language of R.C. 3107.07(A) does not allow a respondent-parent to cure the failure to provide maintenance and support during the relevant one-year period through the retroactive application of later-made payments. Accordingly, we decline to address Father's argument that the probate court erred in categorizing the unemployment funds as mere arrearage payments because that argument in this case is moot.

Justifiable cause for failure to provide support and maintenance

{¶19} Although Father asserts in his assignment of error that the probate court failed to hold Stepfather to the requisite burden of proof, this Court clarifies that he does not argue that the

trial court improperly shifted the burden of proof to him. Instead, the substance of Father's argument is that the probate court's determination that he did not have justifiable cause for failing to provide support and maintenance for the child during the statutory lookback period is against the manifest weight of the evidence. This Court disagrees.

{¶20} While this Court reviews the probate court's finding that a parent failed to provide support for an abuse of discretion, "[w]hether justifiable cause has been proven by clear and convincing evidence is a separate issue the determination of which will only be reversed on appeal if it is against the manifest weight of the evidence." (Internal quotations omitted) *In re Adoption of F.A.* 2015-Ohio-2249, at ¶ 9. When addressing a manifest weight challenge, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶21} The petitioner bears the burden of proving by clear and convincing evidence both the respondent's failure to provide support and lack of justifiable cause. *In re Adoption of A.L.H.*, 9th Dist. Medina Nos. 18CA0084-M and 18CA0085-M, 2020-Ohio-3527, ¶ 8.

> Even so, in the face of evidence of a lack of the requisite * * * support, the respondent-parent may not simply remain mute, but must rather demonstrate some facially justifiable cause for the parent's failure. Nevertheless, while the respondent-parent may acquire a burden of going forward, the ultimate burden of proof remains with the petitioner.

(Internal citations omitted) *Id.*

{¶22} R.C. Chapter 3107 does not define the term "justifiable cause." Ohio courts, however, have come to construe the term in consideration of a parent's ability to financially support a child. *In re Adoption of B.A.A.*, 9th Dist. Wayne No. 16AP0073, 2017-Ohio-8137, ¶ 15, citing *In re Adoption of Masa*, 23 Ohio St.3d 163, 167 (1986) ("[A]bility to pay is a key factor in determining whether there is justifiable cause for failure to support a child."). "'To determine whether the parent is financially capable of paying support requires an examination of the amount of income from all sources, the amount of the support order, and the entire financial situation including the types and amounts of other financial obligations.'" *In re Adoption of M.F.*, 9th Dist. Summit No. 27166, 2014-Ohio-3801, ¶ 14, quoting *In re Adoption of A.H.*, 9th Dist. Lorain No. 12CA010312, 2013-Ohio-1600, ¶ 15.

{¶23} In the face of Stepfather's evidence that Father had failed to provide maintenance and support for the child during the year immediately preceding the filing of the adoption petition, Father asserted that he was financially unable to pay support because his business was failing due to the economic conditions associated with the global pandemic. In response to Father's facially justifiable cause for his failure to support S.G.L., Stepfather presented clear and convincing evidence of Father's lack of justifiable cause.

{¶24} Stepfather called Father to testify as on cross examination. This Court first reviews the evidence regarding Father's income from all sources. He testified he is the sole owner of MasterTech Auto and Sales, a business he has owned for a number of years. As the global pandemic impacted his business and the economy in general, Father changed the focus of his business to buying truck cabin chassis which he would link with truck beds to build and resell small trucks. He testified this shift in his business was the "only way for us to survive."

{¶25} Father admitted that his only financial accounts were his business checking account and business credit card from PNC Bank. Stepfather presented authenticated bank statements from Father's PNC accounts. Father conceded that there were deposits made to his business account in the amounts of $51,746.19 and $173,406.39, respectively, for the relevant months during the 2020 and 2021 lookback period. He claimed that some of that money consisted of government business stimulus funds which he could not use for anything except business expenses. He admitted, however, to using business funds for his personal needs. In addition, he admitted that he used his business credit card to make a $100 child support payment in March 2019, the last child support payment he made for S.G.L.

{¶26} Father's PNC bank statements throughout the lookback period evidenced many payments for food deliveries, fast food, ATM cash withdrawals, and even a $144.97 charge for Vivid Seats at the NFL Hall of Fame. Father could not account for the thousands of dollars in ATM withdrawals. On various occasions, he blamed his employees for these purchases and withdrawals, claiming that at least six people had access to the business credit card. On other occasions, however, he testified that he had no employees during the lookback period because the business could not afford to pay them.

{¶27} Father authenticated his 2020 combined business and personal tax return. It indicated that his business paid $0 in wages to employees that year. Accordingly, it is unclear how employees would have had access to his business credit card. Father admitted that he could not produce a 2021 tax return because he had not yet filed one by the time of the March 25, 2022 hearing. He claimed he could not afford to have his taxes prepared at that time.

{¶28} Although Father's bank statements showed deposits into his business account during 2020, in excess of $250,000, his 2020 tax return contained no information regarding gross

business receipts, leaving that portion of the return blank. He testified he had an accountant prepare his tax return and that he did not know why there were no business receipts noted. He added that there were errors in his tax return and that he had not reviewed the third party's preparation before signing because he was busy. Father explained that he had subpoenaed his accountant to testify and explain the multiple discrepancies, but he believed the accountant did not honor the subpoena for fear of incriminating himself.

{¶29} In addition to allegations that his 2020 tax return was inaccurate, Father testified that PNC Bank and CSEA had also made record keeping errors regarding his accounts. Specifically, he disputed the deposit of tens of thousands of dollars into his bank account and a $1.00 child support payment, both made prior to the lookback period.

{¶30} The next consideration is the amount of Father's child support order. He complained that his current child support obligation was not warranted by his financial circumstances. When he moved the domestic relations court for a modification, that court increased his basic obligation by over $230.00 a month and added amounts assigned for cash medical support and arrearages. Pursuant to R.C. 3119.021, the domestic relations court would have modified Father's child support obligation in consideration of his annual income. R.C. 3119.03 creates a rebuttable presumption that child support calculated in that manner is "the correct amount of child support due." Father, therefore, had the opportunity to present evidence to rebut the applicability of the statutory child support schedule and worksheet when the domestic relations court was considering his requested modification. Given the finality of his modified child support order, this Court can only conclude that Father failed to rebut the statutory presumption. Accordingly, Stepfather presented clear and convincing evidence of Father's financial means to pay child support.

{¶31} Father both admitted that he failed to pay child support during the lookback period and asserted that he gave Mother $100 to $200 in cash every time she dropped off S.G.L. for visitation. He alternatively claimed he was unable to provide support for the child and that he had offered Mother $10,000 after receiving government stimulus funds for his business. Father earlier testified that he was precluded by law from using any government bailout funds for anything other than business expenses. He testified that he used those government monies to pay his employees but not himself. Father immediately contradicted himself and admitted that he did pay himself out of those monies but only "to sustain" himself and not to profit. He admitted using the government business stimulus money to pay his home utility bills as well.

{¶32} The final consideration for determining whether a parent is financially capable of paying child support is the parent's "entire financial situation including the types and amounts of other financial obligations." *See In re Adoption of M.F.*, 2014-Ohio-3801, at ¶ 14. Stepfather presented evidence that Father used the proceeds from the sale of his previous home to have another of his business entities, Summit Towing, buy his current home. Father admitted that Summit Towing is "idle" and a business in name only. There is no mortgage on his current home. He further testified that he also owns a "little land next door."

{¶33} Father shares his home with his daughter from another relationship and his mother. He testified that he pays for his daughter's basic needs, asserting "I have custody of my daughter. I had to take care of her. That's my job." He clarified that he provides "[e]verything a parent would pay [for]" to support his daughter. Father testified that his mother pays the utility bills for the home and gives him additional money from her retirement funds.

{¶34} Based on a thorough review of the evidence, this is not the exceptional case in which the trier of fact clearly lost its way and created a manifest miscarriage of justice by finding

that Stepfather proved by clear and convincing evidence that Father lacked justifiable cause for failing to provide for the maintenance and support of the child during the year relevant to this matter. Father is the sole proprietor of MasterTech Auto and Sales. Banking documents demonstrate the business received deposits of large sums of money every month during the lookback period. Business funds were used to pay for fast food, food deliveries, Hall of Fame tickets, one child support payment in 2019, and numerous ATM cash withdrawals for which Father could not account. Father is the sole owner of another business that owns his home which carries no mortgage. He also owns an adjoining plot of land. His mother currently pays the home utility bills and gives Father additional money from her retirement benefits.

{¶35} Father consistently contradicted himself throughout his testimony. He testified alternatively that he had up to six paid employees and no employees because he could not afford to pay for help, that he could not afford to pay child support and that he routinely gave Mother $100 to $200 during visits and offered her $10,000 to increase his time with the child, and that the business lacked resources to pay him and that he in fact received payments to sustain himself. Despite the authentication of financial records, Father testified that his accountant, PNC Bank, and CSEA all made errors in their record keeping regarding his assets and accounts. He testified that the domestic relations court erred by raising his child support obligation despite his failure to rebut the presumption that its calculation pursuant to the child support schedule and applicable worksheet indicated the correct amount of child support due. *See* R.C. 3119.03. Under these circumstances, this Court cannot say that the probate court erred in its assessment of Father's credibility.

{¶36} Stepfather presented clear and convincing evidence that Father was capable of providing maintenance and support for S.G.L. Father's PNC Bank account evidenced large sums

of gross receipts for the business. The domestic relations court had recently increased Father's child support obligation by a substantial amount based on his income. In addition, Father was living in a home unencumbered by a mortgage where his mother paid for the utilities. Father did not credibly rebut Stepfather's clear and convincing evidence of Father's ability to have provided maintenance and support for S.G.L. during the statutory lookback period. Accordingly, the probate court's finding that Father lacked justifiable cause for his failure to support the child is not against the manifest weight of the evidence.

{¶37} We clarify that this conclusion does not implicate an improper burden shifting by either the probate court or this Court. Petitioner-Stepfather maintained the burden of proof at all times to establish by clear and convincing evidence both that Father failed to support the child and that he lacked justifiable cause for doing so. Stepfather met that burden. Father might have successfully rebutted Stepfather's evidence, but he did not do so.

Conclusion

{¶38} The probate court did not abuse its discretion when it found that Father failed to provide maintenance and support for S.G.L. during the requisite statutory lookback period. Father's argument challenging the trial court's categorization of unemployment monies that CSEA had not received during the year prior to the filing of the adoption petition is moot and therefore, this Court declines to address it. The probate court's finding that Father lacked justifiable cause for failing to provide support for the child during the relevant time is not against the manifest weight of the evidence. Accordingly, Father's assignment of error is overruled.

III.

{¶39} Father's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Probate Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶40} I respectfully dissent. I would conclude that the probate court erred in its application of law, and by failing to hold a hearing to consider Father's proffered newly discovered evidence.

**{¶41}** As Father asserted he had applied for and been approved for unemployment assistance during the lookback period, the probate court should have allowed him to present additional evidence to explain how CSEA would have applied those monies to his child support obligation. Instead, in the absence of any opportunity for the parties to present evidence and brief the issue, the probate court summarily determined without citation to any authority that those funds would only have been applied to Father's child support arrearage.

**{¶42}** The majority assumes merely for the sake of argument that the probate court erred when it found that Father's intercepted unemployment monies would only have reduced his child support arrearages, with no portion being applied to current support. I would affirmatively find error, however, as a portion of that lump sum payment would necessarily have been applied to his current monthly support payment. *See* R.C. 3119.28(A) (defining "current support payment" as the amount due for the current month as specified in a child support order, exclusive of arrearages). In addition, an obligor must pay a statutory 2% processing fee with every payment of current support, as well as every payment on arrearages. R.C. 3119.27(B). Accordingly, I believe some portion of Father's $14,931 unemployment benefits would have been credited at a minimum to the current support due for the month the agency received it, as well as the processing charges relating to the current support and arrearage payments.

**{¶43}** In my opinion, the probate court erred by finding that Father's intercepted unemployment benefits paid no current monthly child support obligation. The questions then become (1) whether and to what extent that money was credited for child support due during the lookback period, and (2) if those credits constituted the provision of maintenance and support for S.G.L. as required by law or judicial decree so that Father's consent to adoption would have been

required. A hearing on Father's newly discovered evidence would have given the parties and probate court the opportunity to develop and resolve these issues.

{¶44} Adoption law is ripe for a legislative overhaul to clarify many issues, as evidenced by the frequent split decisions out of the Ohio Supreme Court regarding these types of cases. *See, e.g., In re Adoption of H.P.*, 171 Ohio St.3d 453, 2022-Ohio-4369; *In re Adoption of A.K.*, 168 Ohio St.3d 225, 2022-Ohio-350; *In re Adoption of A.C.B.*, 159 Ohio St.3d 256, 2020-Ohio-629; *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450. I recognize the efforts of the Ohio House of Representatives in seeking "to modernize adoption laws" by passing 2023 OH H.B.5 last year. Unfortunately, there are no proposed revisions to R.C. 3107.07(A) as the statute relates to the provision of maintenance and support. I would encourage the legislature to consider additional clarifying modifications. Moreover, until any new laws are enacted, litigants and courts will continue to struggle to comply with and apply provisions which have been accorded their "plain meaning" as that has been variously interpreted. *See, e.g., In re Adoption of B.I.* at ¶ 27 and ¶ 49 (the majority and one dissent construing the plain language of R.C. 3107.07(A) relating to the obligation to support a minor in different ways).

{¶45} I remain resolute in my conviction that the involuntary and permanent termination of parental rights in adoption proceedings is no different from permanent custody proceedings in juvenile court. *In re Adoption of A.J.T.*, 9th Dist. Lorain No. 21CA011814, 2022-Ohio-2619, ¶ 25 (Carr, J., dissenting), citing *In re Adoption of Y.E.F.*, 163 Ohio St.3d 521, 2020-Ohio-6785, ¶ 19. In these "family law equivalent of the death penalty" cases, courts must strictly construe the adoption statutes in favor of retaining parental rights. *Id.*, quoting *In re Adoption of A.K.* at ¶ 20, and *In re Adoption of Y.E.F.* at ¶ 19.

{¶46} In this case, I am concerned by the probate court's (mis)application of the law in this case. First, the trial court repeatedly referred to Respondent's failure to provide "more than de minimis support" for the child, when R.C. 3107.07(A) uses the "de minimis" modifier only as to a parent's contact with the child. Second, the probate court misconstrued the application of funds in relation to current support, finding that monies will only be applied to arrearages when such exists. Finally, the probate court's denial of a hearing on Father's newly discovered evidence left unresolved the issue of whether a large lumpsum payment of child support received after the lookback period can be retroactively applied as child support payments during the lookback period. Under these circumstances, I would reverse the probate court's judgment and remand for further proceedings.

APPEARANCES:

K. P., pro se, Appellant.

GARY M. ROSEN, Attorney at Law, for Appellee.