[Cite as *In re Adoption of S.N.W.*, 2025-Ohio-1994.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: THE ADOPTION OF S.N.W. AND
     N.N.J.W.

C.A. Nos.     31259
                   31261

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    2022 AD 00093
               2022 AD 00094

DECISION AND JOURNAL ENTRY

Dated: June 4, 2025

STEVENSON, Judge.

{¶1} Appellant, J.L. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Probate Division, that found that her consent is not required for the adoption of her two minor children under the terms of former R.C. 3107.07(A)[1] because she had failed "to provide for the maintenance and support of the minor [children] as required by law or judicial decree for a period of at least one year immediately preceding . . . the filing of the adoption petition[.]" This Court reverses and remands.

---

[1] Effective March 21, 2025, R.C. 3107.07(A) was amended to significantly change the relevant language at issue here. Because this case pertains to the version of R.C. 3107.07(A) that was in effect at the time Custodian filed the adoption petition, all references in this opinion to R.C. 3107.07(A) are to that prior version.

I.

**{¶2}** Mother is the biological mother of the children in this adoption case: N.N.J.W., born January 16, 2011; and S.N.W., born September 1, 2012. The adoption petition in this case was filed by Custodian, who had been named the children's legal custodian in a juvenile court case several years ago. The children's fathers did not contest the adoption petitions in the probate court or file briefs in this appeal. Consequently, this Court will focus its review on facts relevant to Mother.

**{¶3}** Custodian and her husband became the children's legal custodians in a 2016 juvenile court case, but the record in this adoption case includes few details about the juvenile case. For reasons not explained in this record, Custodian and her husband, then friends of Mother, filed complaints in the juvenile court for legal custody of these children. Pursuant to an agreement of the parties, the juvenile court placed N.N.J.W. and S.N.W. in the legal custody of Custodian and her husband on June 16, 2016, and closed the case. At that time, Mother was not ordered to pay child support.

**{¶4}** Through a later administrative order from the Summit County Child Support Enforcement Agency ("CSEA"), Mother was ordered to pay child support of $25 per month per child, plus a processing fee. Although the administrative order was not introduced into evidence, the parties presented CSEA records to verify Mother's monthly child support obligation and that she did not regularly pay that obligation.

**{¶5}** On October 5, 2022, Custodian filed petitions to adopt N.N.J.W. and S.N.W. She alleged that Mother's consent to the adoption was not required under R.C. 3107.07(A) because Mother had failed to provide the children with maintenance and support, without justifiable cause, for the one-year period before Custodian filed the adoption petition. She made no allegation that

Mother failed to maintain regular contact with the children. Several months later, the probate court permitted Custodian to proceed without her husband joining as a petitioner because it determined that "incapacity and other circumstances [] make it impossible or unreasonably difficult to obtain either the support or refusal of the other spouse." *See* R.C. 3107.03(D)(3).

{¶6} Mother filed objections to the adoption petition, and the matter proceeded to a hearing before a magistrate on whether Mother's consent to the adoption of these two children was necessary, given Custodian's allegation that Mother had failed to pay child support during the one-year lookback period. At the hearing, Custodian and Mother disputed the amount of monetary support that Mother had provided directly to Custodian or the children, but both agreed it was a minimal amount. Custodian testified that Mother gave her a total of five dollars during the lookback period; Mother testified that she had directly given each child monetary gifts in excess of $20 during that period, but she could not remember the exact amount.

{¶7} The parties also submitted CSEA documentation for the court's review. Prior to the hearing, Custodian submitted CSEA payment information that demonstrated that, as of July 21, 2022, Mother had made no child support payments toward either child's CSEA account since August 4, 2021. At the hearing, Mother submitted more recent CSEA documentation, reflecting her CSEA payments from January 1, 2022 through December 5, 2023. Pertaining to the relevant one-year lookback period of October 5, 2021 through October 5, 2022, these documents demonstrated that only one payment was made to each child's account on September 20, 2022. One child's account received a payment of $503.23 and the other child's account received $508.95.

{¶8} On cross-examination, Mother explained that the source of each of the September 2022 payments was from seized income tax refunds from tax years prior to 2022. Custodian's position at the hearing was that seized income tax refunds were not voluntary payments of child

support and, therefore, should not be included in the court's calculation of maintenance or support provided by Mother during the relevant period under R.C. 3107.07(A). Mother conceded that, during the relevant lookback period, she had made no other payments to either child's CSEA account.

**{¶9}** The magistrate decided that Mother's consent to the adoption of these two children was not required because Custodian had presented clear and convincing evidence that Mother had failed, without justifiable cause, to provide for the maintenance and support of the children for a period of at least one year immediately preceding the filing of the adoption petitions. R.C. 3107.07(A). The decision focused, in large part, on reasoning that the seized income tax refunds were involuntary payments and, therefore, could not be considered as payments of child support for purposes of R.C. 3107.07(A).

**{¶10}** Mother filed objections to the magistrate's decision, which the trial court overruled. The trial court agreed that Mother's seized income tax refunds applied to the children's CSEA accounts could not be considered as a payment of support under R.C. 3107.07(A) because they were not voluntary payments. Further, the trial court emphasized that the payments were explicitly applied to Mother's child support arrearages, rather than her current support obligations.

**{¶11}** The court also found that Mother's failure to pay child support during the lookback period was not justified. Therefore, the trial court found that Mother's consent to Custodian's adoption of N.N.J.W. and S.N.W. was not required. Mother appeals and raises two assignments of error.

II.

**<u>ASSIGNMENT OF ERROR I</u>**

THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT [MOTHER] FAILED TO PAY CHILD-SUPPORT DURING THE LOOK-BACK PERIOD.

**{¶12}** Mother's first assignment of error is that the trial court abused its discretion by refusing to consider her seized income tax refunds in its determination of whether Mother had failed to provide the requisite child support under R.C. 3107.07(A). Generally, a biological mother of a child must consent to the child's adoption by another person. R.C. 3107.06(A). As relevant to this case, R.C. 3107.07(A) provided an exception when the adoption petition alleges, and the probate court finds by clear and convincing evidence, that "the parent has failed without justifiable cause . . . to provide for the maintenance and support of the minor [children] as required by law or judicial decree for a period of at least one year immediately preceding . . . the filing of the adoption petition[.]" Mother's first assignment of error focuses solely on whether the trial court properly determined that she had failed to pay the requisite child support during the lookback period, not whether she had justifiable cause for any such failure.

**{¶13}** Ohio Courts have emphasized that, because adoption terminates fundamental parental rights, "'[a]ny exception to the requirement of parental consent [to adoption] must be strictly construed so as to protect the right of natural parents to raise and nurture their children.'" *In re Adoption of G.V.*, 2010-Ohio-3349, ¶ 6, quoting *In re Adoption of Masa*, 23 Ohio St.3d 163, 165 (1986), quoting *In re Schoeppner*, 46 Ohio St.2d 21, 24 (1976). Consequently, we must construe the language of R.C. 3107.07(A) "to protect the interests of the non-consenting parent who may be subjected to the forfeiture or abandonment of his or her parental rights." *In re*

*Adoption of B.I.*, 2019-Ohio-2450, ¶ 12, quoting *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 366 (1985).

{¶14} It is also well established in Ohio law that whether a parent has failed to make the requisite child support payments under R.C. 3107.07(A) is a factual matter that must be decided by the probate court on a case-by-case basis. *See*, *e.g*., *In re Adoption of M.B*., 2012-Ohio-236, at ¶ 21. The probate court exercises its discretion in determining whether a parent made a sufficient financial contribution by calculating what the parent paid in child support as compared to what the parent owed during the relevant one-year lookback period. *See id*. at ¶ 25-26. The probate court does not have discretion, however, "to ignore relevant evidence that was presented for its consideration at the hearing." *In re Adoption of A.V.H*., 2019-Ohio-369, ¶ 14 (9th Dist.).

{¶15} In this case, the evidence before the probate court demonstrated that, during the lookback period, Mother had a child support obligation through CSEA of $25 per month, plus a processing fee, for an annual support obligation of $300 per child, plus a processing fee. CSEA records indicated that, during the eleventh month of the relevant one-year lookback period, CSEA applied Mother's seized income tax refunds to the children's accounts in the amount of $508.95 and $503.23.

{¶16} Nevertheless, the probate court did not make any financial calculations to determine whether those payments potentially satisfied Mother's obligation to "provide for the maintenance and support" of these two children "as required by law or judicial decree" under R.C. 3107.07(A). Instead, the court refused to consider the seized income tax refunds as potential payments of child support. It reasoned that, because the source of the funds was through involuntary income tax refund seizures, it could not consider those payments for purposes of R.C. 3107.07(A).

{¶17} The trial court cited *In re Adoption of A.C.B.*, 2020-Ohio-629, to support its decision. *In re Adoption of A.C.B.*, however, provides no guidance on whether the source or voluntariness of a parent's payment of child support is relevant to the probate court's determination under R.C. 3107.07(A). That case did not involve any purported payments of child support made through seized income tax refunds or any other type of involuntary or indirect payment of child support. Instead, it involved a father who had made one voluntary payment of child support. The proposition of law on appeal before the Court was whether the "provision of *any* maintenance and support during the statutory one-year period is sufficient to preserve a natural parent's right to object to the adoption of their child." (Emphasis in original.) *In re Adoption of A.C.B.*, 2020-Ohio-629, at ¶ 6.

{¶18} The explicit focus of the Court's decision was on the *amount* of the child support payment, not its *source*. A majority of the court concluded that father's one payment of $200 toward his annual support obligation of $4,420 did not constitute a payment of child support as required by judicial decree under R.C. 3107.07(A). 2020-Ohio-629, at ¶ 1, 20 (lead opinion) and ¶ 21 (Fischer, J., concurring in part and concurring in judgment). Consequently, because *In re Adoption of A.C.B.* did not address this issue, it does not support the trial court's legal reasoning that it was not required to consider involuntary payments of support in its calculation under R.C. 3107.07(A). In fact, there appears to be no case law from the Ohio Supreme Court that addresses this issue.

{¶19} Moreover, there is no language in R.C. 3107.07(A) to support the trial court's conclusion that Mother must have paid child support voluntarily to preserve her parental right to consent to the adoption of her children. The statute merely refers to the provision of maintenance

and support as required by law or judicial decree, not the voluntariness or source of those payments.

{¶20} There is also persuasive appellate authority that the voluntariness and/or source of the payments is not relevant to whether a parent has paid child support that should be included in the probate court's financial calculation under R.C. 3107.07(A). In *In re Adoption of Kessler*, 87 Ohio App.3d 317 (6th Dist. 1993), the court explicitly held that a seized income tax refund, that was applied to the parent's child support obligation during the lookback period, should be considered in the probate court's calculation of whether the parent has paid sufficient child support to retain the right to consent to the adoption of the child under R.C. 3107.07(A). *Id*. at 323-324. The *Kessler* court emphasized that there are many established methods of collecting and paying child support, most of which involve a court order and a means of collection that is not completely voluntary. *Id*. at 323. Consequently, the court concluded that the voluntariness of the payments was irrelevant and that the focus of the probate court's inquiry should be on whether payments were made toward child support during the relevant period. *Id*.

{¶21} As was emphasized in *Kessler*, there are many common means of paying and collecting child support that do not represent a "voluntary" payment of child support by the parent. Perhaps the most common method of child support collection and payment is through wage withholding, which happens through an administrative process in the payroll office of the parent's employer. Similar to payment through a seized income tax refund, child support paid through wage withholding does not involve a volitional act by the parent. In *In re Adoption of Allonas*, 2002-Ohio-2723, ¶ 11-13 (3d Dist.), the Third Appellate District followed the reasoning of *Kessler* to reject the adoption petitioner's argument that the parent's wage withholding payments should

not be considered in the calculation of child support under R.C. 3107.07(A) because the parent did not make payments voluntarily.

{¶22} Similarly, in *In re Wells,* 2001 WL 1199875, *5 (7th Dist.), the court followed the reasoning of *Kessler* to determine that, because payments were made on the parent's behalf and applied to his child support obligation during the relevant period, the source of those funds did not matter. In *Wells*, the grandparents had paid child support on the parent's behalf, and the payments were received by CSEA during the lookback period. This Court has similarly recognized that the source of a child's financial support is not controlling under R.C. 3107.07(A), where the Grandparents of the child had "stepped into Father's shoes" during the relevant lookback period and provided financial support because they regularly "fed, bathed, and clothed [the child]; supervised, entertained, and cared for her; and met all of her other needs." *In re Adoption of A.V.H.,* 2019-Ohio-369, at ¶ 19-20 (9th Dist.).

{¶23} Insofar as some of the cases cited above held that a parent retained a right to consent under R.C. 3107.07(A) by paying a minimal *amount* of support, those holdings are no longer legally sound in light of the Ohio Supreme Court's more recent holdings in *In re Adoption of M.B.*, 2012-Ohio-236, at paragraph one of the syllabus, and *In re Adoption of A.C.B.*, 2020-Ohio-629. Under current precedent, a minimal payment would not have preserved Mother's right to consent under R.C. 3107.07(A). *See id*. Nevertheless, the appellate courts' reasoning pertaining to the voluntariness and/or source of the child support payments remains sound, as the Ohio Supreme Court has yet to address that issue.

{¶24} This Court is persuaded by the reasoning set forth above and concludes that the probate court erred by refusing to consider the seized income tax refund payments in its determination of whether those payments were sufficient to prevent the effective termination of

Mother's parental rights under R.C. 3107.07(A). Because this Court sits as a reviewing court, we cannot conduct the necessary financial calculations in the first instance, nor should we usurp the authority of the probate court to exercise its discretion in this matter. *See*, *e.g.*, *In re A.P.*, 2017-Ohio-8926, ¶ 14 (9th Dist.); *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360 (1992) (holding that even where an appellate court's standard of review is de novo, it is a reviewing court and cannot consider evidence that was not considered by the trial court; otherwise it exceeds its role and in effect becomes a trial court); Section 3(B)(2), Article IV, Ohio Constitution (defining the jurisdiction of Ohio appellate courts).

{¶25} Furthermore, insofar as the CSEA exhibits presented in this case may not provide sufficient information for the court to make the necessary child support calculations, we emphasize that R.C. 3107.07(A) explicitly placed the burden on Custodian to demonstrate by clear and convincing evidence that Mother had failed to make the requisite payments of child support. *See In re Adoption of A.V.H.,* 2019-Ohio-369, at ¶ 20 (9th Dist.); *see also In re Adoption of Bovett*, 33 Ohio St.3d 102 (1987), paragraph one of the syllabus.

{¶26} This Court defers to the trial court on remand to determine whether Mother's support payments satisfied her obligation under R.C. 3107.07(A). We must emphasize, however, that *In re Adoption of A.C.B.*, 2020-Ohio-629, does not support the trial court's conclusion that Mother's child support payments did not preserve her parental right to consent under R.C. 3107.07(A) merely because the payments were applied toward arrearages. To begin with, given that Mother's income tax refund was applied to each child's account near the end of the eleventh month of the one-year lookback period, a significant portion of those payments were likely applied to child support that accrued during the relevant lookback year.

{¶27} Moreover, in *In re Adoption of A.C.B.*, a majority of the Court agreed to affirm the trial court's judgment that the parent's consent was not required under R.C. 3107.07(A) because the father had failed to pay maintenance and support as required by R.C. 3107.07(A). *Id*. at ¶ 21 (Fischer, J., concurring in part and concurring in judgment). Following the Ohio Supreme Court's long line of case law, the lead opinion addressed the specific facts of the case, i.e., the *amount* of child support the father paid during the one-year period prior to the filing of the adoption petition, in relation to how much he owed in current support for that year, to determine that he had not paid enough of his current child support obligation in the statutory time frame to preserve his parental rights under the language of R.C. 3107.07(A). *Id*. at ¶ 1, 20. The question before the court was simply whether *any* payment in the one-year period under a judicial order was sufficient. Accordingly, numerous times throughout the lead opinion, the specific facts of the case are emphasized: that the father had made only a one-time payment of $200, although his annual obligation was $4,420. *Id.* at ¶ 1, 5, 8, 19, 20.

{¶28} Although paragraphs five and 19 of the opinion also emphasize that the father had a significant child support arrearage, the lead opinion did not refer to arrearages in its statement of the "question before us" or in its conclusion in the case. *Id*. at ¶ 1, 20. The conclusion of the lead opinion explicitly stated, "In making a single $200 payment toward a $4,420 annual child support obligation, father failed to provide maintenance and support as required by law or judicial decree." *Id*. at ¶ 1, 20.

{¶29} In *In re Adoption of A.C.B.*, a majority of the Court agreed that "whether [a parent] has provided the necessary support under the statute is measured by the terms of the judicial decree." *Id*. at 21 (Fischer, J., concurring in part and concurring in judgment). The Court's analysis of "the terms of the judicial decree[,]" however, consistently focused on the father's

$4,420 annual child support obligation that had accrued during the relevant one-year lookback period, not on support that was not paid during prior years. *Id*. at ¶ 1, 8, 20 (lead opinion); ¶ 25-26 (Fischer, J., concurring in part and concurring in judgment). Because the father had paid only $200 toward that annual obligation, the majority concluded that he failed to provide support as required by the judicial decree. *Id*.

{¶30} Even under Justice Fischer's more rigid interpretation of R.C. 3107.07(A), it appears that, had the father paid $85 per week for the entire year, to fulfill his annual support obligation of $4,420, he would have paid child support "as required by judicial decree" under R.C. 3107.07(A), despite his extensive arrearages from prior years. *See id*. at ¶ 25-26 (Fischer, J., concurring in part and concurring in judgment) (emphasizing that the father had not complied with the judicial decree because he had not made each of his weekly payments owed for that current year.). The Court's explicit focus on the father's current support obligation during the relevant lookback period aligned with the language of R.C. 3107.07(A), which requires a parent's failure to pay child support as required by law or judicial decree "for at least one year" prior to the adoption petition, not for any prior years.

{¶31} Consequently, this Court must emphasize that *In re Adoption of A.C.B.* did not address whether R.C. 3107.07(A) pertains to a parent's child support arrearages from prior to the statutory one-year lookback period. It also did not answer the question of whether a parent's payment of a much more significant portion of the annual child support obligation, perhaps a payment of more than was owed during the year, would be sufficient to preserve parental rights under R.C. 3107.07(A).

**{¶32}** For all the reasons set forth above, this Court reverses and remands the probate court's decision that Mother lost her right to consent to the adoption of her children under R.C. 3107.07(A). Mother's first assignment of error is sustained for this reason.

## ASSIGNMENT OF ERROR II

EVEN IF [MOTHER] HAD FAILED TO PAY THE REQUISITE SUPPORT, THE TRIAL COURT'S FINDING THAT SHE LACKED JUSTIFIABLE CAUSE FOR THAT FAILURE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶33}** Because this Court has sustained Mother's first assignment of error, challenging the trial court's determination of whether Mother paid sufficient child support during the lookback period, the issue of justifiable cause has been rendered moot and will not be addressed. *See* App.R. 12(A)(1)(c).

## III.

**{¶34}** Mother's first assignment of error is sustained insofar as the trial court did not consider the income tax refund payments that were applied to each child's CSEA account during the lookback period. Her second assignment of error was not addressed because it is moot. The judgment of the Summit County Court of Common Pleas, Probate Division, is reversed and the cause is remanded for proceedings consistent with this decision.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

SCOT STEVENSON
FOR THE COURT

HENSAL, J.
CONCURS.

FLAGG LANZINGER, P. J.
DISSENTING.

{¶35}  I respectfully dissent.  I would affirm the decision of the probate court on the basis that Mother failed, without justifiable cause, to provide for the maintenance and support of the children during the lookback period.

{¶36}  As the majority acknowledges, CSEA ordered Mother to pay $25.00 per month, per child in child support.  Prior to the hearing before the magistrate, Custodian submitted CSEA documentation reflecting that, as of July 21, 2022, Mother had made no child support payments toward either child's CSEA account since August 4, 2021.  That documentation also reflected that, as of July 21, 2022 (i.e., over two months before the end of the lookback period), one child had a total unpaid balance of $540.16, and the other child had a total unpaid balance of $532.74.

{¶37} At the hearing, Mother submitted more recent CSEA documentation. Specifically, Mother presented printouts from the CSEA's website that reflected one payment to each child's CSEA account during the lookback period. The documentation reflected a payment of $508.95 on September 20, 2022 for one child, and a payment of $503.23 on September 20, 2022 for the other child. The documentation indicated that these payments were applied toward "Past Due Support[,]" not "Current Support[.]" There was no dispute that these two payments (one for each child) were the only payments made during the lookback period. Nor was there a dispute that, even with these payments, Mother's support obligation for each child remained in arrears at the end of the lookback period.

{¶38} As the majority explains, the magistrate concluded that Mother's consent to the adoptions was not required because Custodian proved by clear and convincing evidence that Mother failed, without justifiable cause, to provide for the maintenance and support of the children as required by law during the lookback period. Mother filed objections to the magistrate's decision. The probate court overruled Mother's objections and adopted the magistrate's decision.

{¶39} In her first assignment of error, Mother argues that the probate court abused its discretion by finding that she failed to pay child support during the lookback period. The majority sustains Mother's first assignment of error on the basis that the probate court erred by refusing to consider the seized income tax refund payments in its determination of whether Mother satisfied her support obligation during the lookback period. For the following reasons, I disagree.

{¶40} The Ohio Supreme Court has explained:

Ohio's statutory scheme regarding families and children makes clear that there are two statuses of parental obligation: first, a general obligation of parents to support their children imposed by law in R.C. 3103.03, and second, a specific child-support obligation imposed by judicial decree pursuant to R.C. 3109.05 and Chapter 3119 that supersedes the general obligation once the court issues its decree.

*In re Adoption of B.I.*, 2019-Ohio-2450, ¶ 27. "Once issued, the child-support order determines what the parent's obligation is." *Id.* at ¶ 26.

**{¶41}** I would hold that the Ohio Supreme Court's decision in *In re Adoption of A.C.B.*, which the magistrate and probate court relied upon, requires this Court to conclude that Mother failed to provide for the maintenance and support of the children during the lookback period as required under R.C. 3107.07(A). *See State v. Anderson*, 2018-Ohio-342, ¶ 9 (9th Dist.) ("As an intermediate court of appeals, we are bound by the Ohio Supreme Court's precedent."). There, the biological father was ordered to pay $85.00 per week in child support for a total of $4,420.00 per year. *In re Adoption of A.C.B.*, 2020-Ohio-629, ¶ 1. The child's stepfather later filed a petition to adopt the child, asserting that father's consent was not required under R.C. 3107.07(A) because father failed, without justifiable cause, to provide for the maintenance and support of the child for the year preceding the filing of the adoption petition. *Id.* at ¶ 5. There was no dispute that father had the ability to pay child support, yet he only paid $200.00 during the year preceding the filing of the adoption petition. *Id.* at ¶ 5.

**{¶42}** The probate court found that father failed to provide for the maintenance and support of the child as required under R.C. 3107.07(A). *Id.* at ¶ 6. The Sixth District Court of Appeals agreed. *Id.* In his appeal to the Ohio Supreme Court, father set forth one proposition of law, i.e., "under R.C. 3107.07(A), 'provision of any maintenance and support during the statutory one-year period is sufficient to preserve a natural parent's right to object to the adoption of their child." (Emphasis in original.). *Id.* at ¶ 6, quoting father's Proposition of Law.

**{¶43}** In a 4-3 decision, the majority of the justices (one of whom concurred in judgment) disagreed. The lead opinion explained:

> The starting point—and because the language is clear, the ending point—for our
> analysis is the text of the statute. The plain text of R.C. 3107.07(A) instructs a trial

court to determine whether a natural parent provided maintenance and support "as required by law or judicial decree" for a period of at least one year immediately preceding the filing of the adoption petition.

*Id.* at ¶ 8, quoting R.C. 3107.07(A). The lead opinion continued:

Here, the judicial decree sets forth precisely what father was required to pay: $85 per week, for a total of $4,420 over the course of a year. Father did not pay what the judicial decree required. He paid only $200 for the entire year before stepfather filed the adoption petition. Thus, under the plain language of the statute, father did not "provide for the maintenance and support" of A.C.B. "as required by law or judicial decree" for the requisite one-year period.

*Id.* at ¶ 8, quoting R.C. 3107.07(A). The lead opinion emphasized that "the explicit language [of R.C. 3107.07(A)] controls—support is measured by what is required by law or judicial decree." *Id.* at ¶ 14; *id.* at ¶ 10 ("Whether father has provided the necessary support under the statute is measured by the terms of the judicial decree.").

{¶44} In reaching this conclusion, the Court did not address the voluntariness of father's payments (which was not in dispute), nor did it base its holding on the amount of child support father paid compared to the amount father owed. Instead, the Court simply reasoned that father was required by law to pay a certain amount, that he did not pay that amount, and, therefore, "father did not 'provide for the maintenance and support' of A.C.B. 'as required by law or judicial decree' for the requisite one-year period.'" *Id.* at ¶ 8, quoting R.C. 3107.07(A).

{¶45} Here, there was no dispute that Mother was required to pay $25.00 per month, per child in child support. There was also no dispute that Mother made two payments (one for each child) during the lookback period and that, even with these payments, Mother's support obligation for each child remained in arrears at the end of the lookback period. In fact, the CSEA documentation presented at the hearing reflected that these payments were applied to "Past Due Support[,]" not "Current Support[.]" Even assuming without deciding that tax seizure payments can constitute maintenance and support, Mother's support obligation for each child remained in

arrears at the end of the lookback period. Thus, under the Ohio Supreme Court's controlling precedent in *In re Adoption of A.C.B.* and the plain language of R.C. 3107.07(A), Mother did not "provide for the maintenance and support" of the children "as required by law or judicial decree" during the lookback period. *In re Adoption of A.C.B.*, 2020-Ohio-629, at ¶ 8, quoting R.C. 3107.07(A). Consequently, I would overrule Mother's first assignment of error.

{¶46} In light of the majority's resolution of Mother's first assignment of error, it does not address the merits of her second assignment of error. In her second assignment of error, Mother argues that, even if she failed to provide for the maintenance and support of the children during the lookback period, the probate court's determination that she lacked justifiable cause for that failure was against the manifest weight of the evidence. For the following reasons, I disagree.

{¶47} A probate court's determination of "[w]hether justifiable cause has been proven by clear and convincing evidence . . . will only be reversed on appeal if it is against the manifest weight of the evidence." *In re Adoption of F.A.*, 2015-Ohio-2249, ¶ 9 (9th Dist.), quoting *In re N.L.T.*, 2015-Ohio-433, ¶ 17 (9th Dist.). When addressing a manifest weight challenge:

> this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered."

(Alterations in original.) *In re Adoption of S. G. L.*, 2024-Ohio-2248, at ¶ 20 (9th Dist.), quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21.

{¶48} "The petitioner bears the burden of proving by clear and convincing evidence both the respondent's failure to provide support and lack of justifiable cause." *In re Adoption of S. G.*

*L.* at ¶ 21. "Even so, in the face of evidence of a lack of the requisite . . . support, the respondent-parent may not simply remain mute, but must rather demonstrate some facially justifiable cause for the parent's failure." *In re A.L.H., 2020-Ohio-3527*, ¶ 8 (9th Dist.). "Nevertheless, while the respondent-parent may acquire a burden of going forward, the ultimate burden of proof remains with the petitioner." *Id.*

{¶49} "R.C. Chapter 3107 does not define the term 'justifiable cause.'" *In re Adoption of S. G. L.* at ¶ 22. "Ohio courts, however, have come to construe the term in consideration of a parent's ability to financially support a child." *Id.* (collecting cases). "To determine whether the parent is financially capable of paying support requires an examination of the amount of her income from all sources, the amount of the support order, and her entire financial situation including the types and amounts of her other financial obligations." *In re Adoption of A.H.*, 2013-Ohio-1600, ¶ 15 (9th Dist.).

{¶50} Here, Custodian cross-examined Mother at the hearing before the magistrate. Mother testified that she lived in an apartment with her uncle in 2021, that she did not pay him rent, and that she "think[s she] received food stamps" during that time. Mother also testified that her uncle, boyfriend, and mom helped financially support her during the lookback period. Mother further testified that she supported herself during some of the lookback period because she worked as a nanny for the "first half of 2022[,]" earning about $250.00 per week. Mother explained that she had worked as a nanny "off and on for years," and that she would "do it when [she] need[ed] money." Mother then acknowledged that she did not use any of the money she earned to pay child support.

{¶51} The probate court concluded that Custodian proved by clear and convincing evidence that Mother lacked justifiable cause for not providing maintenance and support. The

probate court reasoned that Mother was employed for almost half of the lookback period yet paid no child support. The probate court also reasoned that Mother was living with her uncle at the time, paying no rent, and receiving food stamps during the lookback period.

{¶52} Having reviewed the record, I would hold that this is not the exceptional case in which the trier of fact clearly lost its way and created a manifest miscarriage of justice by finding that Custodian proved by clear and convincing evidence that Mother lacked justifiable cause for failing to provide for the maintenance and support of the children during the lookback period. Mother only owed $25.00 per month, per child, and earned about $250.00 per week for almost half of the lookback period. Mother did not pay rent during that time, and she received food stamps for groceries. Additionally, while Mother explained "that 95 percent of the time [she] did the best of [her] ability" to meet her child support obligations, she admitted that she could have done better. In light of the evidence presented at the hearing, I would conclude that the probate court's finding that Mother lacked justifiable cause for failing to provide for the maintenance and support of the children during the lookback period is not against the manifest weight of the evidence. Accordingly, I would overrule Mother's second assignment of error and would affirm the decision of the probate court. For these reasons, I respectfully dissent.

APPEARANCES:

JOSEPH SHELL, Attorney at Law, for Appellant.

CORINNE HOOVER SIX, Attorney at Law, for Appellee.